DIBBLE (EGBERTS v.). See Case No. 4,-307.

---

## Case No. 3,881.

### DIBBLE et al. v. MORGAN.

[1 Woods, 406.] [1]

Circuit Court, E. D. Texas. Dec. Term, 1873.

SHIPPING — DELIVERY OF GOODS — PILING ON WHARF — BILL OF LADING — DANGERS OF THE SEA—ACT OF GOD.

1. By the general usage of commercial and maritime law, a carrier by water must convey from port to port or from wharf to wharf. He is not bound to deliver goods at the warehouse of the consignee. It is the duty of the consignee to receive his goods out of the ship or upon the wharf.

2. To constitute a good delivery upon the wharf. the carrier should give due and reasonable notice to the consignee, so as to give him a fair opportunity of providing suitable means to remove the goods or put them under proper custody.

[Cited in Turnbull v. Citizens' Bank, 16 Fed. 147.]

3. The goods of the various consignees when landed must be placed in separate piles. Where the goods of several consignees were piled together in one bulk on the wharf during a rainy and stormy day, and covered with tarpaulins so as not to be fairly open to the inspection of consignees, and a fair chance afforded to remove them; held, that this was no delivery.

4. An actual inspection of the goods and their removal by the consignee is not necessary to a delivery, but there can be no delivery without the opportunity to inspect and remove.

5. By the exception "dangers of the sea." as used in bills of lading, is meant all unavoidable accidents from which common carriers by the general law are not excused unless they arise from the act of God.

6. A loss which might have been avoided by proper foresight and prudence cannot be attributed to "dangers of the sea," and to relieve the carrier from liability for such loss, he must show that due diligence and proper skill were used to avoid the accident, and that it was unavoidable.

7. A loss by the "act of God" must be shown to have happened by a natural and unavoidable necessity. arising wholly above the control of human agencies, and independent of human action or neglect.

8. Any act of omission or carelessness on the part of the master or crew contributing to the loss, takes away the defense that the loss was occasioned by the act of God.

W. P. Ballinger, for plaintiffs.

T. N. Waul, for defendant.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge. and here reprinted by permission.]

WOODS, Circuit Judge. This suit was brought by the plaintiffs [Dibble & Seligson] to recover of the defendant as a common carrier the value of certain merchandise shipped by them at New Orleans and Galveston, in July, 1866, in the steamship Harlan, to be delivered at Indianola, Texas. One of the bills of lading acknowledges the receipt of the goods in good order and condition, and provides that they are to be "delivered in like good order and condition at the end of the ship's tackles at the port of Indianola, the dangers of fire at sea or on shore, collisions, and accidents from machinery, boilers, steam, or any other accidents and dangers of the seas, rivers, and steam navigation of whatever nature or kind soever excepted," and that "the landing of the goods upon the wharf should be considered a delivery to the consignee." The other bill of lading simply provides for the delivery of the goods therein mentioned in good order and condition at the port of Indianola (the dangers of the seas only excepted.) The plaintiffs allege that the goods were never delivered, and judgment is asked for their value. The defendant answers that the Harlan arrived at the port of Indianola on July 11, 1866, of which plaintiffs had immediate notice, and that the goods were delivered to them before noon on the same day.

The facts as developed by the testimony, are as follows: There is but one wharf at Indianola where goods are usually delivered. It extends into the bay about one-eighth of a mile. The Harlan arrived at the head of this wharf a little before 8 o'clock, a. m., of the 11th of July, 1866, and immediately commenced discharging her cargo upon the wharf head. At this time the weather was misty and there was drizzling rain, and before noon the weather became violent and stormy. The freight of the Harlan was all landed before 12 o'clock, m., upon the wharf head, and the goods of the various consignees were piled up in one bulk and covered with tarpaulins. At least twice during the day and once at least after all the freight was landed. application was made to the officer of the ship, who had charge of the cargo, by draymen and consignees, for leave to remove some of the goods from the wharf to the shore, but he would not permit it to be done, and said they were not ready to deliver. Early in the afternoon, the draymen whose business it was to carry goods from the wharf head to the shore, put up their horses and drays for the day, believing that no goods could be delivered on account of the violence of the weather. Some of them thought it unsafe to drive a horse and dray out to the wharf head. During the afternoon the weather became more and more boisterous; the wind blew a gale. The weather was so bad that it was not considered suitable for the removal of goods. They were left under the tarpaulins in charge of a watchman employed by defendant. During

the night the wind blew a hurricane. A sailing vessel which was anchored to the windward of the wharf, broke from its moorings and was blown against the wharf and gradually broke it down and was driven through it. In this way the goods were thrown into the bay and lost.

The first question presented by the pleadings and evidence is, was there a delivery, actual or constructive, to the consignees, whereby the defendant was discharged from his liability as a common carrier? It is not disputed that the goods were landed at the right place, and where both parties expected them to be landed. They were landed at a proper time of day. The plaintiff says, however, that the weather was so bad when they were landed, that he could not be expected to receive them, that he did not receive them, that he was not allowed to receive them, and that, therefore, there was no delivery. The evidence shows that as fast as the cargo of the Harlan, which comprised much merchandise, etc., besides the goods of the plaintiff, was landed, it was placed in bulk under the tarpaulins. By the general usages of the commercial and maritime law, it is settled that the carrier by water shall carry from port to port or from wharf to wharf. He is not bound to deliver goods at the warehouse of the consignee. It is the duty of the consignee to receive his goods out of the ship or upon the wharf. But to constitute a good delivery on the wharf, the carrier should give due and reasonable notice to the consignee, so as to afford him a fair opportunity of providing suitable means to remove the goods or put them under proper care and custody. Richardson v. Goddard, 23 How. [64 U. S.] 39. Delivery upon the wharf, in case of goods transported by ships, is sufficient under our law, if due notice be given to the consignees, and the different consignments be properly separated so as to be open to inspection and conveniently accessible to the owners. The Eddy, 5 Wall. [72 U. S.] 495; The Santee [Case No. 12,328]. I am clear in the opinion that there was no delivery of the goods in this case, under the rules of law just cited. The goods of the various consignees were piled together in one bulk upon the wharf, under tarpaulins, during a rainy and stormy day, where they could not be fairly said to be open to the inspection of the consignee, and a fair opportunity afforded him to remove his goods. An actual inspection of the goods by the consignee, and their removal by him, are not necessary to a delivery of the goods, but there can be no delivery unless the consignee has the opportunity to inspect and carry away. No one can say, that upon the testimony in this case, such opportunity was given the plaintiffs. The officer of the ship, who had charge of the landing of the cargo, declared, as the testimony shows, to one of the plaintiffs and to one of the draymen sent to carry goods from the wharf, that the goods were under tarpaulin, and that the ship was not delivering them, and refused to allow them to be disturbed.

Taking all of the facts of the case into consideration, I am satisfied that when the goods were landed upon the wharf, they were not delivered, nor did the officer of the ship, in charge of the unloading of the ship intend to deliver them by placing them upon the wharf. If I am correct in this view, it follows that the liability of the plaintiff, as a common carrier, continued after the landing of the goods. His obligation as such could not be discharged except by delivery, actual or constructive, to the consignee, unless the carrier was relieved by the act of God or through some exception in his bill of lading. The clause in one of the bills of lading, that the landing of the goods upon the wharf was to be considered a delivery to the consignee, cannot be construed to mean, that any sort of a landing would be a delivery. The bill of lading must receive a reasonable construction. A landing in the night without notice, or a landing in the midst of a storm, whereby the goods are lost, could not be considered a delivery to the consignee.

This brings us to the next inquiry. Is the defendant relieved from his liability, as a common carrier, by the loss of the goods through the vis major, or is he exempt by reason of any exception in his bill of lading? One of the exceptions in the bill of lading is, "dangers of the seas." As long as his liability as a common carrier remained, the defendant was protected by this exception. Do the facts of the case bring him within it? By dangers of the sea are meant all unavoidable accidents from which common carriers, by the general law, are not excused unless they arise from the act of God. To ascertain whether the loss was by such "dangers," it must be inquired whether the accident arose through want of proper foresight and prudence, and to relieve the carrier from responsibility, it is incumbent on him to prove that due diligence and proper skill were used to avoid the accident, and that it was unavoidable. Johnson v. Friar, 4 Yerg. 48; Whitesides v. Russell, 8 Watts & S. 44. The evidence shows that the goods were allowed to remain upon the wharf after the master of the ship was satisfied that a hurricane was imminent, so that he considered it prudent to cast off from the wharf and anchor in the stream. The agent of the defendant left the wharf with the goods upon it, and went to his home and never returned until next morning, after the mischief had all been done. A watchman was left over the goods, who might have given warning of danger to them in time to have them removed to a place of security. But instead of this, he abandons his post, and, after daylight, his lantern is found burning upon the wharf. No agent of the de-

fendant, either on ship or shore, after the landing of the goods, and after a hurricane was known to be imminent, took any pains to put the goods in a place of security. Even after the demolition of the wharf had commenced, it was so gradual, that with alacrity and energy, the goods might have been saved. It cannot, therefore, be said, that the loss of the goods was the result of unavoidable accident which could not have been prevented by due diligence and proper skill. It was, therefore, not occasioned by the danger of the seas, and it does not fall within the exceptions of the bill of lading. If follows, as a further inference from these facts, that the loss was not occasioned by the act of God; for to bring a disaster within the scope of the phrase, "the act of God," for the purpose of relieving the common carrier from responsibility, it is necessary to show that it occurred independent of human action or neglect. It is only a natural and inevitable necessity, and one arising wholly above the control of human agencies, which constitutes the peril or disaster contemplated by that phrase. 2 Kent. Comm. 597. Any act of omission or carelessness on the part of the master or crew, contributing to the loss, takes away the protection of the defense, that the loss was occasioned by the act of God. The Zenobia [Case No. 18,209]. It follows from these views, that there never has been any delivery of the goods, and that defendant has not excused the want of delivery. He is, therefore, liable for the value of the goods, and judgment must be given, therefor, against him.