LUIE BEACH v. THE STATE.

*No. 45.    Decided June 3.*

1. **Perjury — Indictment — Affidavit for Continuance.**—An indictment for perjury assigned upon an application for continuance need not set forth the form of the oath taken, but is sufficient if it alleges that the party was duly sworn. It is wholly immaterial whether the accused swore to the facts set forth according to the best of his knowledge and belief, or that they were absolutely true. In either event he was duly sworn, within the meaning of article 188 of the Penal Code.

2. **Same—Charge of the Court—Authorized by Evidence, when.**—On a trial for perjury assigned on an affidavit for continuance, in which it was stated that the proposed witness " was not absent by the procurement or consent of affiant," and the court, in its charge. having submitted to the jury the assignment of perjury based upon this allegation, to which it was objected that there was no evidence warranting the submission of such issue: *Held*, that evidence showing that defendant knew the proposed witness was in town at the time he was preparing his application for continuance; that he was drinking and holding private conversations with said witness within a stone's throw of the court house just immediately before swearing to said application. was amply sufficient to authorize and require the court to submit to the jury the matter complained of, as an issue in the case.

3. **Same.**—On a trial for perjury based upon an application for continuance, the court, in its charge, properly submitted to the jury, as issues, assignments

based upon the statements in the application, "that the application was not made for delay, and that there was no reasonable expectation that the attendance of said witness can be procured during the present term by a postponement to some future day," when the undisputed facts in the case show the contrary to be true.

**4. Perjury — General Verdict where there are Several Assignments.**—Where there are several assignments of perjury, and there is proof to sustain any good assignment, a general verdict will be sustained.

**5. Same — Circumstantial Evidence — Quantum of Evidence.**— Under article 746. Code of Criminal Procedure, it is provided, that no person can be convicted of perjury except upon the testimony of two credible witnesses, or of one credible witness strongly corroborated by other evidence, as to the falsity of defendant's statements under oath. Whilst this rule necessarily precludes a conviction on evidence purely circumstantial, yet if the facts sworn to by witnesses conclusively show as true, that defendant swore contrary to what he necessarily knew to be the truth, this is sufficient to sustain a conviction.

**6. Charge of Court—Accomplice Testimony—Credible Witness.** On a trial for perjury, where the court has already instructed the jury, in accordance with article 746 of the Code of Criminal Procedure, as to the quantum of proof required, and has also defined what constitutes an accomplice, and what a credible witness, and further, that if they found a certain witness to be an accomplice they were to disregard his testimony: *Held*, that the charge was sufficient, and the court did not err in not specifically telling the jury to disregard his testimony if he was not a credible witness.

**7. Indictment.**—Where an indictment for perjury assigned upon an affidavit for continuance in a certain cause, clearly states that said cause was upon regular call; that defendant swore to the application to obtain a continuance, and that the oath was necessary and required: *Held*, that it was not essential to its validity that it should set forth the additional fact, that the State had announced ready in said cause.

APPEAL from the District Court of Erath. Tried below before Hon. N. R. LINDSEY, Special Judge.

This is an appeal from a conviction for perjury, wherein the punishment assessed against appellant was five years confinement in the penitentiary.

The perjury was assigned, by the indictment, upon an application for continuance made by appellant in a certain cause pending in the County Court of Erath County, wherein appellant was charged, by indictment, with carrying on and about his person a pistol on or about the night of the 31st of October, 1888.

The application for continuance, which was set out in the indictment, is as follows:

"*The State of Texas v. Lute Beach*—No. 556: In the County Court of Erath County, Texas, December Term, 1888. Now at this term of the court comes the defendant, Lute Beach, in the above styled and numbered cause, and says he can not go safely to trial at this term of the court, for the want of the testimony of John Thompson. That said wit-

ness resides in Erath County, Texas, in the neighborhood of the town of Duffau, in said county. That the defendant expects to prove by said witness, John Thompson, that he, Thompson, was with the defendant on the night of the 31st day of October, A. D. 1888, in the town of Stephenville, the time and place where the defendant is charged with having carried a pistol in the indictment in this case, and that he will prove by said witness that he, the witness, was with defendant just a few minutes before the defendant was supposed to have been seen with the pistol; and that said witness will testify that the defendant had no pistol, but had a bottle of whisky in his pocket, and that the witness saw the defendant drop the bottle of whisky out of his pocket, and that afterward the witness picked said bottle up, and knows and will testify that it was not a pistol, but was a bottle of whisky. That these facts have come to the knowledge of the defendant since the commencing of this court. The diligence used to procure the attendance of said witness is this: That on the 5th day of December, A. D. 1888, the defendant caused to be issued, out of the County Court of Erath County, a subpœna for the said Thompson, and placed said subpœna in the hands of N. J. Shand, sheriff of Erath County, on said last named date; that said subpœna is hereto attached and made a part hereof; that said subpœna has not been served by reason of the inclemency of the weather. That the witness is not absent by the procurement or consent of the defendant. That the application is not made for delay. That there is no reasonable expectation that the attendance of said witness can be procured during the present term of the court, by a postponement of the trial to some future day of said term.

[Signed]                                    " M. L. BEACH."

It being also alleged in the indictment, that Lute Beach and M. L. Beach were one and the same person.

The State proved by Keith, deputy county clerk, from the minute book and records of the County Court, the proceedings had on the trial in that court in the case of The State of Texas v. Lute Beach, which proceedings showed, that the case was continued by the defendant on the 10th day of December, 1888, for the testimony of John Thompson, and also showed the indictment against Lute Beach for unlawfully carrying a pistol on the 31st day of October, 1888.

The State proved by Bennett, the district clerk, that this indictment had been returned to the District Court by the grand jury, and had been regularly transferred by that court to the County Court.

D. L. Orr, for the State, testified: That he was deputy clerk of the County Court of Erath County, and as such waited on and acted as clerk for the court at its December Term, 1888. Was present on the morning of December 10, when the case of The State of Texas v. Lute Beach was called for trial. Defendant asked time to prepare an application for a

continuance, which was granted him, it being then near 12 o'clock. Court adjourned for dinner, and witness went home, and upon his return, and a few minutes before court was called, defendant came with his application and asked him to swear him to it.   (Witness is here shown and identifies the application for continuance, and proceeded.)   1 administered to him the oath in one of the following forms, can't say which one: "You do solemnly swear, that the facts stated in the within application are true and correct, to the best of your knowledge and belief, so help you God," or, "You do solemnly swear, that the contents of the within application is true, so help you God."   The witness then read in evidence the application for continuance.   Court was called about 1 o'clock p. m. of said day.

John Thompson, for the State, testified:   My name is John Thompson. I live in Hill County, Texas.   I resided in Erath County, near Duffau, and about twelve miles southeast from Stephenville, in December, 1888. I was at that time acquainted with Tom Laney, Bill Laney, and Lute Beach, the defendant.   Very early on the morning of the 10th of December, 1888, I went from my home (or Willis Thompson's, where I was staying) to Tom Laney's.   Tom was not at home when I got there, but came in a few minutes, and Bill Laney was with him.   We then harnessed a team, hitched it to an empty two-horse wagon, and myself, Tom Laney and his little girl, and Bill Laney all got in said wagon and started for Stephenville, a distance of about twelve miles from Tom Laney's.   It was near an hour by sun when we started.   We drove at a moderate gait, and arrived in Stephenville between 10 and 11 o'clock.   We stopped the wagon near McD. Reil's store, which is on the Eyetooth block, between south and east sides of the square.   I got out of the wagon as soon as it stopped, and the defendant, Lute Beach, met me at or near the wagon and had a short conversation with me, in which he told me that he had a pistol case in court and was desirous of getting it continued; that in order to do so, he had caused a subpœna to be issued for me; that I must keep out of the way until he could get said cause continued.

I then went to the postoffice, and from there I went up the south side of the square to Bill Damson's saloon, which is situated on the southwest corner of the square.   When I was about half-way between the east and west ends of said block I met Billy Damson, and he told me that they were calling me at the court house.   I did not go to the court house, but went on to Damson's saloon.   When I got there Lute Beach was near the door, and he and I went in said saloon together.   I bought a bottle of whisky from McCreswell, Damson's clerk, and Beach and I went on through the saloon to the south, or back, gallery.   Tom Laney also got to Damson's front door just as I did, but I can't say whether he went with defendant and I through said saloon, or he went around said saloon on the west side and met us on the south gallery, but at any rate myself,

Tom Laney, and Lute Beach, defendant, all took a drink of whisky together on said back gallery of said Damson's saloon, and defendant then took me off a short distance from Laney and had a private conversation with me, in which he told me to keep out of the way until he could get his case continued. He told me to go down to his house and to conceal myself there until he continued the case, and then he would notify me.

The drinking above mentioned and the conversation just stated all took place within fifteen minutes after we got in town. I then went from Damson's place to Sol Slaughter's saloon, which was on the north lot on the east side of the square. After I had been at Slaughter's saloon sometime, myself, defendant, and his brother, Cage Beach, all took a drink. Defendant then remained in said saloon, and I and Cage Beach walked out at the front and west door. Just as we walked out, Cage Beach remarked to me, "There goes Bill Oxford, the county attorney." I then looked, and saw Mr. Oxford, and I walked up to him and shook hands with him, and said, "Howdy, Bill!" I did not know him at the time, but called him Bill, because Cage Beach said it was Bill Oxford. After Mr. Oxford had gone on by, I went down the north side of said saloon building toward the east end of same to a side door, and defendant came out at said side door, and we had some conversation there. I then went to Mrs. Willingham's hotel. Defendant lived at said hotel, which was north of and just across the street from Slaughter's saloon. I remained at Mrs. Willingham's hotel till after dinner. Had some conversation with him at said house, both before and after dinner. He was in and out; did not remain there all the time, and did not eat at the same time I did, but was there while I was eating. Defendant's father (Ben Beach), old man Wood, Cage Beach, and I all took dinner together at defendant's table on said day. Immediately after dinner I went over to a gin, about 200 yards north of defendant's house, and remained there sometime. I then returned to Mrs. Willingham's hotel, where defendant lived, and remained there until he, defendant, came to me and told me that I could go where I pleased; that he had succeeded in continuing his case. I think this occurred about 3 o'clock p. m. Sometime later in the afternoon, I went up in the court room. Did not go home that evening. After I left Damson's saloon in the morning I saw no more of the Laney boys, or either of them, until near 3 o'clock in the afternoon.

Cross-examined: I have been a witness against the Beaches in a number of cases for stealing and committing other offenses. I testified in a trial of Cage Beach once, that he, Cage Beach, was with me in Bosque County on Sunday at 11 o'clock, when a whole neighborhood of reputable citizens located him, Beach, on that day and hour at Box Church, in Erath County. My recollection now is, that I and the Laneys did not eat anything from the time we left Tom Laney's till we got to Stephenville, on December 10, 1888. Am sure we did not stop on the road. I

went to the gin because defendant requested me to keep out of the way, and I remained there and at the hotel till he told me I could go where I pleased.

Re-examined: I did not know that he was going to swear to an application for a continuance, and did not know that was necessary. Defendant said he could get a continuance if I would keep out of the way.

Tom Laney testified to going to Stephenville in a wagon on the 10th day of December, together with Bill Laney and John Thompson. After getting to town saw defendant and Thompson meet together, and drank with them at a saloon, after which saw defendant take Thompson off and have a private conversation with him. This was about fifteen minutes after reaching town, and witness thinks they reached town about 11 o'clock a. m. Did not see Thompson after that until about 3 o'clock, when witness met him on the public square, and he told witness that he did not wish to go back home with him in the wagon that evening.

Bill Laney testified, as did the former witness, about going to town in the wagon with Thompson; but he stated he did not see Thompson after reaching town until about 3 o'clock, when Thompson declined returning with them in the wagon, and he saw Thompson and defendant together just before he got into the wagon to go home.

W. A. Dawson testified: Was in the County Court room when the case of The State v. Lute Beach, for carrying a pistol, was called for trial, and as witness left the court room he heard the sheriff calling John Thompson as a witness in that case. Walked down on the street and met John Thompson on the square, and told him he was being called as a witness at the court house. He said he was going to get a drink. Soon after I learned that Beach had continued his case.

McCresswell testified to selling John Thompson a bottle of whisky on the day the Beach case was continued.

Barnes testified to seeing Thompson and Beach together about 12 o'clock, talking, on the day the application for continuance was sworn to.

Oxford, county attorney, testified: That he represented the State in the County Court on the day the pistol case against Beach was called. It was called for trial about 12 o'clock, and witness announced ready for the State. Defendant asked time to prepare an application for a continuance, and court adjourned for dinner. As I passed along the street, a man who was in company with Cage Beach shook hands with me and said, "Howdy, Bill," in about 50 feet of defendant Lute Beach's house. Court was recalled after dinner about 1 o'clock, and I saw this man again in the court room about 3 or 4 o'clock that afternoon, and learned his name was John Thompson, and that he was the absent witness mentioned in Beach's application for continuance. I proceeded immediately to prosecute Beach for perjury.

Defendant impeached John Thompson for truth and veracity by Dave Lockhart, James Hollis, John Laney, G. E. Howard, Bill Laney, and Henry Armstrong, and introduced no other testimony.

The exceptions reserved by the defendant at the trial complain of the charge of the court, because it submitted issues as to assignments of perjury not raised by the evidence, and because the charge submitted the assignments of perjury in the alternative, and under the instructions in said charge, it could not be determined under which assignments the defendant was found guilty.

*Frank & Devine* and *Young & Martin*, for appellant.— 1. The first eror assigned is, that the court erred in permitting the witness D. L. Orr to testify, that the defendant had sworn the contents of the application were true to the best of the knowledge and belief of defendant (affiant), as stated in bill of exceptions number 1, for the reason that there is no allegation in the indictment that the defendant had sworn to the best of his knowledge and belief, and there is no allegation that the contents of the application were not true to the best of defendant's knowledge and belief. 3 Greenl. Ev., sec. 194; The State v. Lea, 3 Ala., 602–606.

In this it is evident that the proof does not correspond with the allegations. The proof being of an oath upon knowledge and belief, the indictment should have alleged, that appellant was so sworn, and should have negatived both defendant's knowledge and belief.

2. The court erred in instructing the jury to consider the assignments of perjury upon the allegation that the witness John Thompson was not absent by the procurement or consent of defendant, and that the application was not made for delay, for the reason there was no testimony other than that of the witness John Thompson to support either of these assignments, and said witness was clearly not a credible witness; and it therefore became the duty of the court to determine the value of the testimony, and not submit said assignment to the jury. The Code of Criminal Procedure, article 746, provides: " In trials for perjury no person shall be convicted except upon the testimony of two credible witnesses, or upon the testimony of one credible witness corroborated strongly by other evidence as to the falsity of the defendant's statements made under oath, or upon his own confession in open court."

There must then be one credible witness as to the falsity of the statement; the one credible witness may be corroborated by facts and circumstances; but at least one credible witness must testify to the falsity of the statement. The law here protects the defendant by providing, that the witness shall be credible, and further, that he shall testify to the falsity of the defendant's statement. It follows from this, that there can be in Texas no conviction upon circumstantial evidence alone. If we concede that there were many facts tending to show the falsity of the statement,

still these are not sufficient to convict unless we first find a credible witness.

That John Thompson was not a credible witness is clearly shown by his own testimony. This makes him an accomplice to the alleged crime. Under our laws an accomplice is not a credible witness. Code Crim. Proc., art. 741. This was the rule at common law; our statute is but declaratory of the law as it aforetime was.

The two assignments here complained of, and which we insist should never have been submitted to the jury, were matters entirely within the knowledge of the witness John Thompson. In fact, no other witness does corroborate him, or can corroborate him, as to the private conversations between defendant and himself. He alone testifies to any fact showing that he was absent by the procurement or consent of defendant. The point was promptly reserved in a full bill of exceptions.

It became, under this state of fact, the duty of the court to instruct the jury to acquit as to these particular assignments. Code Crim. Proc., art. 745. The action of the court in submitting these assignments was error. Our statute makes the court the judge of the quality of the evidence in all cases, and in this character of cases of the weight and value of the testimony also. Gabrielsky v. The State, 13 Texas Cr. App., 439; Cox v. The State, 13 Texas Cr. App., 479.

In this connection, the testimony of the witness John Thompson, and of the other witnesses as to the facts showing the presence of John Thompson in the town of Stephenville on the day the application for a continuance was made, we call the attention of the court to the uncontroverted statement in the application, that process had been issued for the witness, but that the sheriff had failed to execute it. The witness John Thompson had never been subpœnaed. Defendant had complied with the law in causing process to be issued, and, without fault on his part, the sheriff failed to execute the process. This is a circumstance strongly contradictory of the witness John Thompson. It accounts for his absence.

But these two assignments must depend upon the testimony of John Thompson. The fact that he was absent when the case was called for trial does not corroborate his statement, that he was absent by the procurement and consent of the defendant. Being an accomplice, he must be corroborated, because the law so requires in every case. And being the only witness to the falsity of defendant's statement, he must be corroborated strongly. He can not corroborate himself, either by his own words or his own acts, nor can any other witness corroborate him by testifying to his acts. Gabrielsky v. The State, 13 Texas Cr. App., 439; Cox v. The State, 13 Texas Cr. App., 479.

In a perjury case the conviction can not stand upon the testimony of an accomplice, however strongly he may be corroborated.

3. The third assignment is, that " the court erred in submitting to the jury the assignment of perjury upon the allegation that there was no reasonable expectation of procuring the attendance of the witness by a postponement of the trial to some future day of the term, for the reason that this was but the expression of an opinion as to a future statement of facts."

We do not think perjury can be properly assigned here. The indictment charges, that Lute Beach then and there knew there was a reasonable expectation, etc., by a postponement of the trial to some future day of the term of the County Court, and that John Thompson was then in the town of Stephenville, in calling of the court house, etc.

If we should assume the allegations, that John Thompson was in calling of the court house, and defendant knew of his presence, to be true—if we admit the fact to be as stated in the indictment, in traversing this assignment—this would sustain the assignment of perjury upon other allegations, but not as to the one traversed here. Here defendant said nothing as to the reasonable expectation of securing the attendance of the witness at the time the application was filed and sworn to; but as to the reasonable expectation of securing the attendance by a postponement to some future day of the term. Upon this assignment of perjury the State introduced no testimony whatever. In order to sustain it, the State should have proven that there was a reasonable expectation of procuring the attendance of the witness by a postponement of the trial to some future day of the term. This involved a consideration of the length of the term, the business of the court, the condition of the docket, the assignment of the docket, and moreover, that the defendant knew that the cause could be set for some future day of the term, and that the witness could be then secured.

But should this court be of the opinion that perjury can be assigned upon this statement, then the remarks as to the second assignment apply with equal force here, and the State has no credible witness upon whose testimony to ask a conviction. It is true, that several witnesses saw John Thompson in the town of Stephensville on the day the application was made. It is also true, that several witnesses saw John Thompson and Lute Beach together on that day. We concede that in an ordinary case they would sustain the testimony of an accomplice, as to the matters testified to by them. They might complete one of the measures provided by the statute, but they do not prove either of the matters which were within the knowledge of Thompson alone; and the State has provided in cases like the present two measures in which the court must weigh both the admissibility and the weight of the testimony. John Thompson, in addition to being a confessed criminal and an accomplice in this matter, is contradicted by three witnesses in the record, and David Lockhart, James Hollis, John Laney, G. E. W. Harwood, Bill Laney,

and Henry Armstrong all testify that his general reputation, etc., for truth and veracity is bad. Some of these are witnesses for the State. No man could be found who would testify to his good reputation for truth and veracity.

4. The fourth assignment we do not wish to present to this court.

5. The fifth assignment of error is, substantially, that in this State there can be no conviction for perjury upon circumstantial evidence.

We admit that there were circumstances surrounding the defendant at the time the application was made, which corroborate the State's witness John Thompson as to some fact testified to by him on the trial. But the witnesses who testified to these circumstances do not testify to the falsity of the statement upon which perjury is assigned.

None of the witnesses except Thompson testify that the witness was absent by the procurement of the defendant. The assignment that the application was made for delay is not supported by the testimony of any other witness. Thompson himself testifies, he was absent at the time the cause was called for trial and at the time the application for continuance was presented. The witnesses W. A. Dawson, McCresswell, and J. B. Barnes show that Thompson was in the town of Stephenville during the time between the calling of the cause and the filing of the application. The witnesses Oxford and Barnes show that defendant and John Thompson were together during that time. These facts tend to corroborate Thompson as to his presence in the town. But all this testimony is valueless to the State, unless one credible witness shall testify that the allegations of the application are untrue, or at least that one of them is untrue. Not one of them corroborate Thompson as to these matters.

6. The sixth assignment is, that all the other assignments having been presented in bills of exceptions and in the motion for a new trial, the court ought to have granted the defendant a new trial, and the refusal to do so was error. This being discussed fully in the other assignments, need not be further discussed here.

Should the court find that there was sufficient evidence to convict upon any one or more of the assignments of perjury, then we still think that the error of the court in submitting the other assignment was such error as to entitle the appellant to have this cause reversed for a new trial in the lower court. Exceptions were promptly taken and bills of exceptions promptly filed. The fact that the evidence may warrant a conviction upon one assignment can not justify the trial judge in submitting other assignments, upon which the requirements of the law have not been complied with. Such action of the trial judge was prejudicial to the rights of appellant, and has placed him in position to complain of them here; and every opportunity was given the trial court to correct the errors complained of. The errors complained of here were complained of at the time they occurred, and throughout the trial.

An assignment of error presented for the first time in this court is, that the indictment is defective, in that it does not allege any facts showing the materiality of the statement upon which perjury is assigned, in that it does not allege that the State had announced ready for trial, or any fact to show that any issue had been joined, or that there was any necessity for making application for a continuance.

Two other questions remain to be considered: Was Thompson an accomplice? Was he guilty of any offense? He testified, that appellant told him he wanted to continue the case. He agreed with appellant to absent himself from the court in order that defendant might make the necessary application for continuing the case. According to his own testimony, he did absent himself from the court. Is he not directly connected with the act of defendant in making the application? Knowing that it would be made, he aids and encourages defendant in securing the continuance. The application was necessary to the continuance; was part of the formed plan and design of illegally securing a continuance. Thompson is, by the law, presumed to have known that it was necessary for defendant to make these allegations assigned as perjury, and to swear to them. Knowing the necessity for making these allegations, he agrees to assist defendant in securing the continuance. The court below took this view of the matter, and submitted to the jury a question as to whether or not John Thompson was an accomplice. Under the test made by the court, Thompson was a self-confessed accomplice. This being the case, we again assert that the evidence does not support the verdict as to either of the statements assigned as perjury. ·

The other question is, as to the failure of the court to instruct the jury to disregard Thompson's evidence if they should find him not to be a credible witness. This was important, and under the facts was fundamental error. The court charged them to disregard his testimony, if they should find him to be an accomplice. This left the jury free to consider his testimony as a credible witness, if he was not an accomplice. In this case there was but one witness to the falsity of the statement assigned as perjury. The issue as to his credibility was directly raised on the trial, and ought to have been submitted. Smith v. The State, 22 Texas Cr. App., 199.

If Thompson was a credible witness, was he corroborated? Do the facts testified to by the other witnesses, showing his presence in the town of Stephenville and in company with appellant after the cause was called for trial, prove that he subsequently absented himself with defendant's consent? Do they prove that appellant requested him to leave the town and hide himself at the cotton gin? He was drinking at the time. His absence from the court does not prove that appellant procured him to be absent. He himself testifies that he was absent—had gone off to the cotton gin. He testifies, that his conversations with appellant were not in

the presence of any other person. No other person can corroborate him as to the procurement or consent; no other person testifying that appellant knew whither Thompson had gone. He was in the town after the cause was called, and was absent from the court when the application was heard. He was not subpœnaed, and the evidence fails to show that he was called when the application was heard. The conviction in this cause must depend upon the testimony of John Thompson, supported by the presumption or inference, that because Thompson was absent, therefore defendant procured and consented to his absence. The corroborating testimony should not be such as to depend upon the one witness for the conclusion to be drawn from it. Independently of his statements, Thompson's absence could be accounted for in many ways. The evidence is of Thompson's statements by Thompson, and of his presence in the town and in company with appellant by other witnesses. The cause of his absence is entirely his testimony, and mere proof of his absence does not corroborate him as to the cause of his absence. If Thompson was absent without the procurement or consent of appellant, then all the other assignments must fall. If appellant neither procured his absence, nor consented to his absence, then there can not be even a presumption as to appellant's guilt upon the assignments with regard to delay and postponement.

In this character of cases the jury are not the exclusive judges of the facts nor of the credibility of the witnesses.

*R. L. Henry*, Assistant Attorney-General, for the State.— 1. The witness Thompson was not an accomplice, and he was a credible witness. He was not a particeps criminis to the transaction. The following authorities sustain this proposition: 1 Bish. Crim. Prac., secs. 1159, 1160; Phillips v. The State, 17 Texas Cr. App., 175; Anderson v. The State, 20 Texas Cr. App., 312; Davis v. The State, 2 Texas Cr. App., 588, 605; Barrara v. The State, 42 Texas, 260; Williams v. The State, 42 Texas, 392; O'Connor v. The State, 28 Texas Cr. App., 288; Smith v. The State, 28 Texas Cr. App., 309.

2. Where there are several assignments of perjury, part of any one will sustain the count; and the count should not restrict the jury to a finding on this one. 2 Bish. Crim. Proc., sec. 934.

3. The court charged correctly the law in regard to accomplices. The mere fact that a witness stays away from court at the request of a defendant, in order that such defendant may get a continuance of a cause by committing perjury, does not make that witness an accomplice to the perjury. Authorities under first proposition.

4. On the sufficiency of the indictment, see Willson's Crim. Forms, No. 124; Hernandez v. The State, 18 Texas Cr. App., 134; Covey v. The State, 23 Texas Cr. App., 388.

5. The court fairly submitted the issue of the credibility of the witnesses to the jury, charged that the jury were the judges of the credibility, and gave a definition of what would be a credible witness. It would have been improper to have referred to any particular witness in the charge.    Meuly v. The State, 31 Texas Cr. Rep., 155.

6. If John Thompson was a credible witness (and the jury thought so, and the law did not discredit him as an accomplice), there were sufficient corroborating facts of his testimony to sustain the conviction.

SIMKINS, JUDGE.—Appellant was convicted of perjury, and his punishment assessed at five years confinement in the penitentiary, from which he appeals.

1. The appellant complains that the court erred in permitting the State's witness to testify, that in swearing to the application for continuance, upon which the perjury was assigned, he swore that the facts therein set forth were true to the best of his knowledge and belief, for the reason that there was no allegation to that effect in the indictment. It is wholly immaterial whether appellant swore to the truth of the facts set forth according to the best of his knowledge and belief, or that they were absolutely true.    In either event, he was duly sworn within the meaning of the code.    It was not necessary that the indictment should set forth the form of the oath.    It was sufficient to allege that appellant was duly sworn.    West's case, 8 Texas Cr. App., 122; Massie's case, 5 Texas Cr. App., 84.    If the form of the oath or the manner of administering it had been needlessly set forth, then the proof would have to correspond. West's case, supra.

2. The appellant complains, that the court erred in submitting to the jury the assignments of perjury upon the allegation that the witness John Thompson was not absent by the procurement of defendant; first, because there was no testimony supporting either assignment except John Thompson's evidence; and second, the character of said Thompson for truth and veracity was clearly shown to be bad; and besides, he was an accomplice.    If appellant's position is correct, the court erred in submitting the issue when there was no evidence to support it; but we do not agree with counsel as to the facts.    The record shows, that Lute Beach being indicted for carrying a pistol, his case was called for trial on the morning of December 10, 1888, at 11:30 or 12 o'clock, when defendant asked time to prepare an application for a continuance.    The court adjourned; and immediately before it met after dinner, Lute Beach went before the clerk, and swore to his application, and when court met he presented it.    This was at 1 o'clock.    The application was based on the absence of one John Thompson, who would swear "the so-called 'pistol' was a bottle of whisky."

Leaving out Thompson's testimony, it is shown that the witness Thompson came to town in a wagon with the two Laney brothers. They reached town before court adjourned in the morning. Defendant, shortly after their arrival, was seen with Thompson in front of a saloon, where they had a private conversation together, and afterwards was seen drinking with him in the rear of the saloon, and knew of his presence in town at the time he swore to the application for a continuance. All the witnesses show that Thompson was in town from 11 o'clock until after 3, and at one time was in the court house, and most of the time upon the court house square, or in the saloon on the square. The witnesses Tom Laney, Oxford, and Barnes unquestionably show Beach and Thompson were together before and during the adjournment of court. . We think the testimony ample to support the action of the court in presenting the issues to the jury, whether the witness was absent by the procurement or consent of the appellant. Knowing that Thompson had come to town (Stephenville), he asked time to prepare an application for a continuance on account of his absence, and employed the hour of adjournment in preparing an application for an alleged absent witness, who he knew was present, and with whom he was drinking and holding private conversations in a stone's throw of the court house. It would be an affectation of doubt to say that the witness may have been absent without his consent.

3. But if there was, we could see no reason for disturbing the verdict upon the second and third assignments of perjury, " that the application was not made for delay,'' and " that there was no reasonable expectation that the attendance of said witness can be procured during the present term of the court by a postponement of the trial to some future day of the term.'' The undisputed facts in the case show the contrary to be true. The process of the court was at appellant's command to enforce the attendance of the witness then and there, if he was unwilling to come into the court house.

4. But it is insisted that the verdict is fatal because it does not appear upon what assignment the same was found, and the proof is not sufficient to sustain them all. If we take Thompson's testimony into consideration, there is no question as to appellant's guilt on all the assignments. It is well settled, that where there are several assignments of perjury, and there is proof sufficient to sustain any good assignment, a general verdict will be sustained. 2 Bish. Crim. Proc., sec. 934; Whart. Crim. Law, 2260; 2 Greenl. Ev., sec. 93; Am. and Eng. Encycl. of Law, title " Perjury,'' sec. 7.

5. But counsel insist, that one can not be convicted of perjury upon circumstantial evidence in Texas, because the code declares, that " in trials of perjury, no person shall be convicted except upon the testimony of two credible witnesses, or upon the testimony of one credible wit-

ness corroborated strongly by other evidence as to the falsity of defendant's statement made under oath, or upon his own confession in open court.'' Code Crim. Proc., art. 746. It was decided by this court, that in order to convict of perjury, it is not required in every case that the two witnesses must swear directly adversely to the fact or facts sworn to by the defendant, but it is sufficient when the facts sworn to by said witnesses, if true, conclusively demonstrate defendant's guilt. Thus, if the facts so sworn to, if true, show that defendant must have been ignorant of the matter about which he swore, it is sufficient to sustain a conviction (Maines' case, 26 Texas Cr. App., 22); or when the facts testified to by said witnesses conclusively show as true that defendant swore contrary to what he necessarily knew to be the truth. United States v. Wood, 14 Pet., 430; 2 Bish. Crim. Proc., sec. 932. There is ordinarily no other way of proving the second and third assignments of perjury as '' to delay '' and '' reasonable expectation of procuring attendance of witness'' except by circumstantial evidence, and if perjury can be assigned at all (of which we have no doubt) on these statements, they must be proven by facts conclusively showing their falsity.

6. Appellant complains that the court erred in not instructing the jury to disregard the testimony of Thompson, because he was an accomplice to the act of perjury. The evidence of Thompson was, that as soon as he came to town, Lute Beach met him, told him he had issued a subpœna for him, and he must keep out of the way until he got his case continued; that he did not know defendant was going to make the application for a continuance and swear to it. In his admirable charge the court instructed the jury on what constituted an accomplice, and then instructed them, if Thompson came within such requirements, to disregard his testimony. The court did not err in not specifically telling them to disregard his testimony if he was not a credible witness. The court carefully charged what a credible witness was, and that to convict of perjury it must be on the testimony of two credible witnesses, or one with strong corroborating evidence. This was sufficient under Muely's case, 31 Texas Criminal Reports, 155.

7. The indictment in the case was well drawn. It was not necessary that it should set forth the fact that the State had announced ready for trial. It was not necessary that such should have been done to constitute the crime of perjury. It was the false oath taken by appellant that constituted the crime; and it could have been made and presented to obtain a continuance without an announcement of ready on the part of the State. The indictment clearly states that the cause was upon regular call, and the defendant swore to the application to obtain a continuance, and the oath was necessary and required.

We have given earnest and laborious investigation to this case, and we can not escape the conclusion of appellant's manifest guilt, and that

he has had a fair and impartial trial.   In view of the many instances of perjury tainting our legal proceeding, and especially in this very matter of obtaining continuances, it would seem that this court should carefully avoid erecting barriers against the arms of justice, to the end that there may be a better administration of the law.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.