## ALLEN v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 27, 1912.)

### No. 1,070.

1. PERJURY (§ 15*)—TWICE IN JEOPARDY FOR SAME OFFENSE.

One may be convicted of perjury for testifying falsely in his own behalf on his trial for counterfeiting of which he is acquitted, and is not thereby twice put in jeopardy for the same offense, but the government should not institute a prosecution for perjury on substantially the same evidence presented on the trial for counterfeiting.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 62; Dec. Dig. § 15.*]

2. PERJURY (§ 37*)—EVIDENCE—INSTRUCTIONS.

Where, on a trial for perjury, no witness directly testified to the falsity of the testimony of accused, and there was no direct written evidence springing from accused proving the falsity of his testimony nor any admission, established by evidence, inconsistent with his innocence, the action of the court in charging that a conviction was authorized if the testimony of the prosecution irresistibly led the jury to the conclusion beyond a reasonable doubt, that accused swore falsely and contrary to what he necessarily knew to be the truth, and in refusing to charge that to convict, the falsity of the testimony must be proved by two credible witnesses or by one witness and corroborative circumstances, was reversible error.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 134–138; Dec. Dig. § 37.*]

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro.

Sidna Allen was convicted of perjury, and brings error. Reversed.

Walter S. Tipton and J. C. Buxton (Watson, Buxton & Watson, on the brief), for plaintiff in error.

A. L. Coble, Asst. U. S. Atty. (A. E. Holton, U. S. Atty., on the brief), for the United States.

Before PRITCHARD, Circuit Judge, and DAYTON and ROSE, District Judges.

ROSE, District Judge. The plaintiff in error was the defendant below. He will be called the defendant. The defendant in error will be referred to as the government. The circumstances are peculiar. A year before the present indictment was returned, the defendant and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one Dickins had been jointly indicted in the court below for (1) making counterfeit $20 gold pieces; (2) having such coins in their possession with intent to defraud; and (3) passing or attempting to pass some of such coins on particular individuals. To such indictment Dickins pleaded guilty. The defendant stood his trial. It was proved that the defendant and Dickins lived close together in Carroll county, Va. They had been for some time closely associated. The defendant had in writing ordered machinery which could be used to make counterfeit coins. He had paid for this machinery by his personal check. Dickins had invented a wagon brake. The defendant had a half interest in the patent therefor. In February, 1910, they came together to Winston-Salem, N. C. Their avowed purpose was to sell rights under the brake patent. While in Winston-Salem, Dickins passed or attempted to pass two of the counterfeit coins, one upon a prostitute, the other upon a hack driver. As a result of his offering one of the coins to the latter, he was arrested. At the time he attempted to pass these coins, and when he was arrested, the defendant was waiting for him at a railroad station in Winston-Salem. There were many other facts and circumstances offered in evidence. Some of these tended to show that the defendant and Dickins were acting in concert. There was testimony that some man who answered more or less closely to the description of the defendant had after the arrest of Dickins made an unsuccessful attempt to recover from the prostitute the coin which had been passed upon her. The defendant took the stand in his own behalf. He admitted everything to which those government witnesses, who had positively identified him, had sworn. He gave an explanation of all such circumstances consistent with his lack of any knowledge of or participation in any illegal act of Dickins. He denied that he had ever visited the prostitute in question, or had ever had any communication of any kind with her. He was acquitted.

About 12 months afterwards, the indictment now before us was found. By it he is charged with perjury in having sworn at his trial for counterfeiting that he was not guilty of the counterfeiting charge; that he did not have the counterfeit coins in his possession, nor did he attempt to pass them; that he had nothing to do with the counterfeit money that Dickins made and passed; that he did not know that Dickins had in his possession in Winston-Salem a counterfeit coin; that he did not make or aid and abet Dickins in the manufacture of counterfeit coins; and that he was in Winston-Salem on February 10, 1910, only for the purpose of selling a patent wagon brake. At the trial of the defendant for perjury, the testimony on both sides was in all substantial respects the same as that which had been given when he was called upon to answer the indictment for counterfeiting. It is true that the government did prove two additional attempts of Dickins to pass the counterfeit coins. When making one of these attempts, it was shown that Dickins had a companion. Such companion did not look unlike the defendant, but the witness would not swear that it was in fact the defendant. The defendant was convicted.

A number of assignments of error are made. The most important are intended to raise the questions (1) whether such a prosecution

can be maintained at all; and (2) whether the defendant can be properly convicted when no witness has testified that what the defendant had sworn in the first trial was false, and when it is not shown that the defendant has ever in writing or otherwise made any representation necessarily inconsistent with the truthfulness of the evidence for the giving of which he was put upon his trial.

[1] The defendant says that he has been twice put in jeopardy *for the same offense.* With this contention we cannot agree. Passing or trying to pass in February counterfeit coins upon various residents of Winston-Salem is *not* the *same offense* as forswearing one's self in June in the United States District Court at Greensboro. State v. Vandemark, 77 Conn. 201, 58 Atl. 715, 1 Ann. Cas. 161; State v. Williams, 60 Kan. 838, 58 Pac. 476; Hutcherson v. State, 33 Tex. Cr. R. 67, 24 S. W. 908; State v. Bevill, 79 Kan. 524, 100 Pac. 476, 131 Am. St. Rep. 345, 17 Ann. Cas. 753; State v. Cary, 159 Ind. 504, 65 N. E. 527; People v. Albers, 137 Mich. 679, 100 N. W. 908; State v. Caywood, 96 Iowa, 372, 65 N. W. 385. In every one of these cases, the defendant was held properly convicted of perjury while testifying in his own behalf when under prosecution for an offense of which he was acquitted. It is true that the right to convict for perjury committed under such circumstances has been denied. U. S. v. Butler (D. C.) 38 Fed. 498; Cooper v. Commonwealth, 106 Ky. 909, 51 S. W. 789, 59 S. W. 524, 45 L. R. A. 216, 90 Am. St. Rep. 275; Petit v. Commonwealth (Ky.) 57 S. W. 14.

But in none of those cases was it held that the prosecution for perjury put the defendant a second time in jeopardy for the same offense. Indeed, Judge, afterwards Mr. Justice, Brown who decided United States v. Butler, supra, pointed out that it was impossible to hold that the defendant was being tried twice for the same crime. If that were true, a defendant testifying in his own behalf in a criminal trial could safely swear to anything he pleased. He could never be punished for perjury so committed. Autre fois convict is as conclusive a plea as autre fois acquit. But the learned judge was of opinion that, wherever the nature of the perjury alleged was such that the real issue of fact to be passed upon by the jury sworn in the perjury case was necessarily the same which had been already decided by the jury in the first case adversely to the contention upon which the government must stand in the perjury prosecution, the matter was res adjudicata. In spite of the great weight which the sound learning and broad wisdom of Mr. Justice Brown give to any of his judicial deliverances, his reasoning in this case has failed to secure general acceptance. The highest courts of Connecticut, Indiana, Michigan, Iowa, and Kansas have expressly declined to follow it. It has been adopted by the Court of Appeals of Kentucky. The reasons why a verdict of acquittal in a criminal case should not necessarily bar a subsequent prosecution of the defendant for perjury committed by him when testifying as a witness in his own behalf are forcibly stated by the Supreme Court of Michigan in People v. Albers, supra. As there argued, public policy may require the recognition of the right sometimes to institute such prosecution. If so much

be granted, it may be neither easy nor safe to lay down a fixed and unvarying rule of law defining the circumstances under which such prosecutions may or may not be undertaken. For the purposes of this case, it is enough to say that it is very hard to imagine any state of things which would justify an indictment for perjury of an acquitted defendant against whom the government offers no other substantial evidence than that which had been before the jury which had found him not guilty. The government and its prosecuting officers should not discredit the verdicts and judgments of its own courts by seeking to induce one jury to find that another gave a wrong verdict upon what is in all material respects the same testimony. The record in the case at bar suggests that the able and experienced attorney for the United States when he began the prosecution for perjury had some reason to think that one of the new witnesses to the passing by Dickins of counterfeit coins would be able to identify the defendant as the person who was with him when such attempt was made. After it was found that such identification could not be had, it would have been better to have gone no further with the case. It is unnecessary for us to decide whether upon this record as it stands and as a matter of law we would upon this ground be justified in reversing the judgment of the court below. It will have to be set aside for reasons which, unless other evidence shall be forthcoming, will preclude a verdict for the government in any new trial which may be had.

[2] As already stated, no witness testified to anything which was absolutely inconsistent with defendant's innocence. No admission of his which showed him to be guilty was offered in evidence against him. The defendant prayed the court to instruct the jury that, in order to convict him, the falsity of his oath must be proved by two credible witnesses, or by one such witness and corroborative circumstances sufficient to turn the scale against the defendant's oath. The learned judge declined to give this instruction or others of similar import. He told the jury that such had been the rule of the common law, but that it did not apply in a case like the present. He added:

"This case depends largely upon circumstantial evidence. * * * The law of circumstantial evidence is not supplanted by the rule of the common law which I have stated, but in an indictment for perjury, if the prosecution has introduced testimony showing circumstances which are well connected, strong, cogent, and convincing, which irresistibly lead the minds of the jury to the conclusion beyond a reasonable doubt that the defendant swore falsely as charged in the indictment, that he swore contrary to what he necessarily knew to be the truth, not only is the jury warranted in returning a verdict of guilty under such circumstances, but it would be their duty to do so."

To the refusal of the instructions asked for by him and to the portion of the charge of the learned judge above referred the defendant duly excepted and has assigned error. Such assignments must be sustained. In trials for treason and perjury almost alone are now to be found any survival of the practice of arbitrarily measuring the probative value of evidence by the number of witnesses. It is true that in perjury the requirements of the rule are not now what they once were. There is no question that there are cases in which neither the two witnesses of the earlier law nor the one witness with strong

corroboration, of the later are required to support a conviction. The courts and the text-writers have said that the oath of a living witness to the falsity of the statement in question is not indispensable—

"(1) where the falsehood of the matter sworn by the prisoner is directly proved by documentary or written evidence springing from himself with circumstances showing the corrupt intent; (2) in cases where the matter so sworn is contradicted by a public record, proved to have been well known to the prisoner when he took the oath, the oath only being proved to have been taken; and (3) in cases where the party is charged with taking an oath contrary to what he must have known necessarily to be true, the falsehood being shown by his own letters relating to the fact sworn to, or by any other written testimony existing and being found in his possession and which has been treated by him as containing the evidence of the fact recited in it." United States v. Wood, 14 Pet. 440, 441, 10 L. Ed. 527; 1 Greenleaf on Evidence, § 258.

It may well be that a conviction might be sustained under still other circumstances, although the living witness was not forthcoming. If so, the evidence that the defendant had in fact forsworn himself must be direct and positive. If true, it must demonstrate the defendant's guilt. Such was the testimony held sufficient in People v. Doody, 172 N. Y. 165, 64 N. E. 807. We have examined the other authorities relied on by the government. None of them sustain its contention. We have already quoted from Greenleaf on Evidence. 30 Cyc. 1452, in so many words declares:

"Positive and direct evidence is absolutely necessary in a perjury case. Circumstantial evidence standing alone is never sufficient."

In Beach v. State, 32 Tex. Cr. R. 240, 22 S. W. 976, the facts proved were absolutely inconsistent with the innocence of the accused. The court there, it is true, says that two witnesses need not swear directly adversely to the fact sworn by the defendant. It is sufficient when the facts conclusively demonstrate his guilt. It, however, shows the sense in which it intends its words to be understood by citing as its authority for them United States v. Wood, supra. The most recent text-writers recognize that to convict of perjury the government must produce testimony of a more direct and positive character than is required to justify a verdict of guilty of other offenses. There is no suggestion that the rule as laid down in Greenleaf and in United States v. Wood, supra, is not in substance still binding on the courts. 3 Wigmore on Evidence, § 2040; 2 Chamberlayne's Modern Law of Evidence, § 989.

In this case no witness directly swore to the falsity of any of the testimony for the giving of which the defendant was indicted. Nor is there any direct written evidence springing from himself which proves any of that testimony to be untrue. No admission or action of his established by the evidence is logically inconsistent with his innocence. Under such circumstances the refusal of the instructions asked for by him and the giving of the portion of the charge above quoted constituted prejudicial error.

The judgment of the lower court will have to be reversed.