# APRIL 29, 1942

### WALTER BELL V. THE STATE.

No. 22004. Delivered March 25, 1942.
Rehearing Denied April 29, 1942.

The opinion states the case.

*William E. Nicholas, Jr.*, of Aransas Pass, and *Miller & Dawson*, of Sinton, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the crime of perjury, and sentenced to a term of two years in the penitentiary.

The facts show that in a certain probate trial before the county judge of Aransas County, one Tom Holland testified that he had been approached at his home in such county by appellant, his wife, Mrs. Annie Bell, and Mrs. Marie Bell, and one Walter F. Jackson; that Jackson told Holland that he desired Holland to witness a will of Jackson's, a copy of which was there present; that Holland at first demurred on account of claiming he would not be a proper witness, owning no property, and being but a newcomer in the county; but upon Jackson convincing the witness that such facts would not disqualify him, Holland signed such purported will, as had also Mrs. Marie Bell previously signed as a witness, and then Jackson signed the same in the presence of the witnesses, as well as in the presence of appellant and his wife Mrs. Annie Bell, stating that the said instrument was his last will and testament.

We now quote from the testimony herein of County Judge Fox as to what happened upon the trial to probate the above instrument:

"After Mr. Holland had testified, I turned to Walter Bell, who was sitting right there by Tom Holland, and said: 'Walter, you have heard the testimony of Mr. Holland. What have you got to say with reference to it? Is it correct or not correct?'

and he (Walter Bell) said, 'It is correct,' or words to that effect."

It then appears that this witness Tom Holland, in this present case, took the witness stand and testified that appellant and his wife, Annie Bell, came out to Holland's house about two weeks after Walter F. Jackson's death, while witness was chopping wood, and called witness over to a car in which they were sitting, and asked witness to do them a favor; they wanted him to sign this will as a witness; that he signed the same as such, and probably the name of the other witness, Mrs. Marie Bell, was already on the paper, but witness thought that Jackson's name was not on it at the time he signed the purported will. That the testimony that he gave before the county judge was not true; neither Mrs. Marie Bell nor Walter F. Jackson was present at the time he signed this purported will. Mr. Jackson had been dead two weeks at such time, and Holland had attended the funeral.

Mrs. Tom Holland testified that she remembered the time her husband was cutting wood out at her home and Walter Bell and his wife, Annie Bell, (the daughter of the witness) came out there and talked to Mr. Holland; this was after Mr. Jackson was dead and buried; Mrs. Marie Bell was not at her place after the death of Mr. Jackson.

Oscar Dye testified that he knew Walter F. Jackson, and knew when he died. After the death of Jackson Mrs. Annie Bell brought a paper to him, with the name of Walter F. Jackson signed thereto, and asked him to sign the same as a witness. He identified the purported will as the same shown to him, but there were no witnesses signed thereto when exhibited to him, and Dye did not sign the same.

Mrs. Roy Roberts then testified that she was a stenographer and typist and had worked for many years for a firm of lawyers in Rockport. That she was a tenant of appellant and wife, their houses adjoining. At the direction of Mrs. Annie Bell the witness prepared the purported will offered for probate; this will was prepared about ten days after Mr. Jackson's death; the copy used by witness for the phraseology of such will was a carbon copy of another will presumably of Jackson's in which one Moore was the beneficiary.

Mr. Roy Lewis, who qualified as a handwriting expert, testified that the purported will of Walter F. Jackson, in which appellant was the beneficiary, was not signed by Jackson, but in his opinion such signature was a forgery.

Perjury may be proven by circumstantial evidence. See Art 723 Vernon's Ann. Code of Criminal Procedure, Sec. 3, and many cases there cited.

We quote from Plummer v. State, 35 Tex. Cr. R. 204, 33 S. W. 228:

"These requested charges are based upon the proposition that perjury cannot be proved by circumstantial evidence, and that there must be at least one credible witness, corroborated as the law requires, swearing positively to the statement assigned for perjury. The statute (Code of Crim. Proc., Art. 746) (786) requires that the falsity of the statement be established by the testimony of two credible witnesses, or by one credible witness strongly corroborated. We hold that the falsity of the statement can be established by circumstantial evidence, but this must be done by the testimony of at least two credible witnesses, or by one credible witness strongly corroborated, as the law requires. In all criminal cases the guilt of the accused can be established by circumstantial evidence. Why cannot the falsity of a statement in a perjury case be established by the same character of evidence? The difference between other cases and perjury cases is this: While one witness may be sufficient to establish the guilt of the accused in other cases, the law requires two credible witnesses, or one credible witness strongly corroborated, in perjury cases. It is not the character of the proof that is contemplated by the statute, but the number and character of the witnesses."

Again we quote from Beach v. State, 32 Tex. Cr. R. 253, 22 S. W. 976:

"But counsel insist, that one can not be convicted of perjury upon circumstantial evidence in Texas, because the code declares that 'in trials of perjury, no person shall be convicted except upon the testimony of two credible witnesses, or upon the testimony of one credible witness corroborated strongly by other evidence as to the falsity of defendant's statement made under oath, or upon his own confession in open court.' Code of Crim. Proc., art. 746. It was decided by this court,

that in order to convict of perjury, it is not required in every case that the two witnesses must swear directly adversely to the fact or facts sworn to by the defendant, but it is sufficient when the facts sworn to by said witnesses, if true, conclusively demonstrate defendant's guilt. Thus, if the facts so sworn to, if true, show that defendant must have been ignorant of the matter about which he swore, it is sufficient to sustain a conviction (Maines' case, 26 Texas Cr. App. 22); or when the facts testified to by said witnesses conclusively show, if true, that defendant swore contrary to what he necessarily knew to be the truth. United States v. Wood, 14 Pet. 430; 2 Bish. Crim. Proc., sec. 932."

It will be observed that the witness Tom Holland was an accomplice and thus denominated in the court's charge. However, we have from two other witnesses the statement, from one, that at the time she prepared this purported will, the expected signer thereof had been dead for about ten days; from another witness, that when he was asked to sign the same as a witness, there were no other names thereon save Mr. Jackson's, who was dead at such time. It therefore appears from both of such statements that Mr. Jackson could not have have had in his possession, at the time testified to by Holland before the county judge, this purported will, and could not have signed the same in the presence of Tom Holland, Walter Bell, Mrs. Annie Bell and Mrs. Marie Bell. We think these cogent circumstances, established as they are by the testimony of two witnesses whose credibility is not attacked, will fulfill the demands of the statute.

Complaint is also made because it was not shown that the county judge had finally rendered any decision in such probate cause. Such a final decision was not necessary. See Hutcherson v. State, 33 Tex. Cr. R. 73, 24 S. W. 908; Poulter v. State, 157 S. W. 166.

Complaint is also made relative to the sheriff's return on the posted citation in which it is said that such citation was posted at the court house door for ten days, such return showing the citation came to hand on December 27, 1940, and executed the same day by posting copy for ten days, the return being filed on December 27, 1940. Obviously the ten days had not expired on the day such return was filed, but it is shown that this cause in which the perjury was alleged went to

trial January 13, 1941, more than the ten days required by law for the posting of such notice. We are shown no authority wherein it is declared to be the duty of an officer, after he has fulfilled the mandate of the law in posting a notice, to also inspect the same each recurring day, in order to ascertain whether same thus remains posted for the necessary ten days. We think after such notice has been properly posted, it should be presumed to have so remained posted until the alloted time has expired, unless otherwise shown to have been removed or destroyed.

Two bills of exceptions are in the record. The first complains because it is therein alleged one of the jurors trying the case was intimidated by some fellow-members of the jury into voting for a verdict of guilt, whereas he did not think appellant's guilt had been shown.

It was therein shown by the juror that when the jury had voted eleven to one in favor of guilt, this juror claimed that the foreman, and possibly one other, asked him if he thought eleven minds were better than one; that such "would look bad to the court, there being eleven good men against one. I believe he said more, but I don't say definitely that he did. The words made me believe that the court might punish me in some way if I didn't agree with the other eleven men. Mr. Hagar (foreman) told me that the court was going to question me for being the only juror to vote not guilty." Mr. Hagar denies the latter portion of this statement, but declares that he did say: "That's going to look mighty bad to the court. * * * Well, I guess the court will have to investigate it." But he also said such statement was made in a joking manner, and intended as such. The juror claims that on account of such, he was coerced and intimated into voting for a verdict of guilt, but when questioned in open court as to the verdict, he acknowledged such to be his verdict. It seems that this jury returned into court two incomplete verdicts before they finally returned one satisfactory to the trial judge, all three of which, however, finding the appellant's guilt, and to all of these the juror assented. We do not think a juror should thus be allowed to attack his own verdict, which he has openly asserted as his, on any legitimate argument that might have been made by his fellows in the sanctity of the jury room during their deliberations. These deliberations are usually secret, and oftentimes occupy quite a period of time, and should consist of an interchange of views between jurors, and reasons governing such for

the position taken, and ordinarily such should not be the basis of an impeachment of his verdict by a juror. It is here shown that in the course of their argument the foreman, doubtless thinking that the lone juror was a recalcitrant juror, stated in effect that a hung jury, eleven to one, would look bad to the court, and it might be investigated. The lone juror soon thereafter asked for another vote, and then joined his fellow-jurors, and acknowledged such unanimous verdict to be his own, in the presence of the court. The trial court investigated this matter and found no injury to the appellant ensued, and we think his holding should be upheld herein. We early held in Austin v. State, 42 Texas 355:

"Where misconduct of the jury is cause for a new trial, it is only so conditionally. It must be shown that the defendant has not received a fair and impartial trial, by reason of such misconduct, and the discretion of the court must be exercised upon the facts in granting or refusing the motion on that ground."

To the same effect is the case of Gilleland v. State, 44 Texas 356; also 31 Tex. Jur., p. 216.

We think the trial court was justified in holding that this juror should not be allowed to thus lightly impeach his verdict, especially so in view of his easy surrender to what he claimed as a threat, but which the foreman claimed to be but a joke.

The foreman testified, among other things:

"I may have said something to Mundine to the effect that 'Young man, don't you think that eleven minds are better than one. That is going to look mighty bad to the Court,' in a joking way, but I was just joking about eleven minds being one way and he another. I made no remark to him that the court would have to investigate."

There were six jurors used in the testimony found in bill No. 1, and four of such jurors gave the same version as that above quoted. Mr. Mundine and one other juror state that the statement went further and said: "Well the court will have to investigate it."

We think that under the facts here presented, the trial court was correct in holding that no error was shown in bill No. 1.

Bill of exceptions No. 2 complains because it is therein alleged that the jury in their deliberations discussed the failure of the defendant to testify, and thus violated Art. 710, C. C. P. Mr. Mundine testified in the motion for a new trial that Mr. Mullinax, a fellow juror, said "that the defendant's failure to testify led the jury to believe that he was guilty." Mundine then said he told Mullinax that the court had instructed them not to use that as evidence. There was something more said, but he did not remember what it was; he also thought juror Taylor also talked about it. Mundine said that the talk about defendant not testifying had something to do with his changing his vote to guilty.

Mr. Stewart, the juror who had been in accord with Mr. Mundine on the matter set forth in bill No. 1, also testified in bill No. 2 that:

"I believe there was something said about the failure of the defendant to testify, but I don't remember anything about it. I don't remember who it was. There was so much talk going on. To the best of my recollection there wasn't very much discussion about it, only just talk among each other. Something was said about something like that. The jury talked among themselves, mentioned something about it. I don't definitely remember the name of any man who mentioned it. I would not say who it was."

Mr. Hagar, the foreman, said he did not hear anything said about the defendant's failure to testify. Mr. Mullinax denied having made any statement relative to defendant's failure to testify, but did testify that he heard some remark; he did not know when such remark was made, "but some one wondered why Bell did not testify, and somebody said, either in the jury room or out of it, I don't remember which, that he did not have to testify unless he wanted to." The jurors testifying relative to such remark about defendant's failure to testify were rather vague as to the time and occasion thereof, but such was probably said to have been made prior to the finding of a verdict.

It is not every casual reference, such as a bare allusion, to a defendant's failure to testify in his own behalf that should result in the granting of a new trial. See Branch's P. C., p. 293, Sec. 569; and the statute itself says:

"* * * but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."

It will be noted that the prohibition of such a failure reaches the jury only in that it prohibits the fact of his failure. to testify from being taken as a circumstance against the defendant, and the allusion thereto reaches only the counsel in the cause.

There were other jurors who testified they did not hear any allusion to the fact that defendant did not take the stand, and only one juror, again Mundine, said that such a statement influenced him, although he warned the foreman who mentioned same to him, that the court had instructed the jury not to consider such.

We think the careful trial court was within his discretion in holding that the jury did not take into consideration, as a circumstance against him, appellant's failure to testify. See Taylor v. State, 88 Tex. Cr. R. 470, 227 S. W. 679; Dyer v. State, 96 Tex. Cr. R. 301, 257 S. W. 902; Vinson v. State, 96 Tex. Cr. R. 307, 257 S. W. 905. We have said in Dyer v. State, supra:

"The jury is obviously aware of that fact (defendant's failure to testify), and the mere mention of it in their retirement is not in every case a ground for reversal," and many cases there cited.

Again: "We do not think that mere allusion to the failure of defendant to testify, coupled with the declaration that the defendant has a right to testify, authorizes a reversal in this case." Leslie v. State, 49 S. W. 73.

We conclude that this cause has been properly tried, and that no error is evidenced therein, and the judgment is accordingly affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a very able motion for rehearing setting out two propositions which he contends to be error. The first

proposition relates to the jurisdiction of the probate court which we think has been amply treated in the original opinion. The second proposition relates to bill of exception number two complaining of the conduct of the jury. We have considered the argument and examined the authorities cited, together with a great many others, and are unable to agree that the trial court abused his discretion in overruling the motion for new trial. Had the testimony of Mundine not been specifically controverted in all its material parts the trial court would have been compelled to have granted a new trial. The two jurors who were accused of presenting to him an argument for conviction based on the failure of the party on trial to testify positively deny that they made the references as testified to by Mundine. It, therefore, became a question of fact for the trial court to determine and we are not privileged to go behind his findings under the record of this case. The subject has been so frequently discussed and so thoroughly treated that we do not believe we could add materially to the original opinion, in all of which we concur.

The motion for rehearing is overruled.