## SOUTHERN PAC. CO. v. SCHUYLER.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

### No. 1,088.

1. CARRIERS—INJURIES TO MAIL CLERK—EVIDENCE.

Where, in an action against a carrier for injuries to a mail clerk by derailment, a witness had testified concerning a cloud-burst, the water from which had undermined the track, and on cross-examination stated that the editor of a certain newspaper had interviewed him concerning it, and had afterwards published an account of the interview, such newspaper account was inadmissible for the purpose of affecting a witness' credibility or otherwise.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1287, 1288.]

2. SAME—CARE REQUIRED—INSTRUCTIONS.

In an action for injuries to a mail clerk by derailment of a train, caused by a washout, an instruction that, though the railroad was bound to take all reasonable precautions against injuries to passengers, it was not required to employ every possible preventative which the highest scientific skill might suggest, nor to adopt any mere speculative and untried experiment, was properly refused, as such rule applies only to cases involving the use of machinery, devices, and improvements in railroad equipment.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1085–1087.]

3. SAME—REQUESTS.

Where the court charged that the law imposed on plaintiff the burden and necessity of showing by a preponderance of evidence that it was the negligence of the defendant railroad company, and not something else, which caused the alleged injuries, the refusal of a requested instruction concerning the preponderance of evidence in such a case was not error.

4. SAME—ACT OF GOD.

Where, in an action against a carrier for injuries to a mail clerk, the court charged that the evidence tended to show that a flood and washout

in the railroad embankment, resulting therefrom, at the point of derailment of the train, was an unforeseen occurrence, and that if the flood and washout were unexpected, and no experience of the officers and agents of the railroad had warned them of the likelihood of such an occurrence, the jury might determine that the flood and washout were caused by an act of God, and that if defendant could not have discovered the condition of the embankment by the exercise of such diligence as skillful men engaged in that kind of business might fairly be expected to use under like circumstances, it would not be chargeable with negligence and would not be liable, the court sufficiently charged the rule with reference to the carrier's liability for the accident, resulting from an act of God.

**5. SAME.**

An instruction, in an action against a carrier for injuries to a mail clerk, that it was the carrier's duty to keep its tracks in a safe condition for the passage of trains under all known conditions, was not error, where the court also charged that such duty was fulfilled when the carrier uses the legal degree of care in the premises, no matter whether the safety be the result or not.

In Error to the Circuit Court of the United States, for the Northern District of California.

The defendant in error brought an action against the plaintiff in error to recover damages for personal injuries sustained in a train wreck on February 17, 1901. The defendant in error was a mail clerk on a railroad train which was ditched near Mill City by the washing out of a fill or embankment. The embankment was about 150 feet long, 24 feet high, and 16 feet wide at the roadbed, and sloped gradually downward and away. It was constructed at a point where a ravine or dry wash comes down to the railroad. A culvert three feet by four feet was constructed through the embankment to carry off the water which came down the ravine. Shortly before the accident, a volume of water gathered at the embankment in excess of the capacity of the culvert. The fill was undermined by the water, and gave way beneath the weight of the train. The complaint charged the plaintiff in error with negligence in failing to exercise proper care in operating its train, and in failing to construct and keep its roadbed in proper condition and repair. The evidence was that the ravine, spoken of in the testimony as "Willow Creek," across which the embankment extended, was ordinarily dry, but that at times it carried large quantities of water which came to it from a watershed of considerable area. The culvert had been sufficient, however, for many years, to carry away the water and prevent injury to the embankment. The train was wrecked about 6 o'clock in the morning. A culvert about three miles west of the wreck, having a capacity three times that of the culvert at the place of the wreck, was found to be washed out at about 8 p. m. on the day before, and thereby the train on which the defendant in error was carried had been laid up for some six hours immediately before the wreck. No inquiry was made by the train crew, the wrecking crew, or any one as to the condition of the culvert at the place of the wreck. The water was running in the ravine there at half past 1, some 15 hours before the wreck, and was rising rapidly in the creek during all of that time. On the afternoon of the 16th, ditches around Mill City, which is two miles from the place of the wreck, were running full of water. The temperature had risen, a warm wind was blowing, rain was falling, and the snow was melting. There was a Japanese track walker, whose duty it was to patrol the track, where the wreck occurred, from 1:30 p. m. to 6 p. m. of the 16th. He was not produced as a witness. There was evidence that the plaintiff in error had made efforts to find him, but had been unable to discover him at the time of the trial of the cause, which was some two years after the wreck occurred. It was shown that he was at Mill City for about five months after the date of the wreck, and that within less than three months after the wreck an action had been commenced against the plaintiff in error to recover damages for the death of a passenger who had been killed in the wreck. About five hours prior to the accident a heavily loaded repair train

passed over the fill without difficulty, but the crew could not see down the embankment more than five feet, and did not see the water which was dammed up. There was evidence of a cloud-burst, which lasted about 15 minutes, on the morning of the 16th, at a point about 25 miles from the place of the wreck. It was the contention of the plaintiff in error that the accident was caused by an unforeseen and unprecedented accumulation of water resulting from an act of God, and that it had used due diligence in constructing the embankment and in patroling its track. The foregoing statement is deemed sufficient to render intelligible the questions which are presented on the assignments of error.

P. F. Dunne, for plaintiff in error.

James G. Maguire and Houx & Barrett, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error, first, that the court sustained an objection to the admission in evidence of a written copy of a newspaper article which had been published in the Lovelock Tribune on March 2, 1901. A witness had testified on behalf of the plaintiff in error concerning the cloud-burst which occurred on February 16th near Lovelock, some 25 miles from the place of the accident. On his cross-examination he stated, whether voluntarily or in answer to a question does not appear from the bill of exceptions, that the editor of the newspaper came and interviewed him about it, and afterwards published an account of the interview. On his redirect examination the plaintiff in error offered a written copy of the published interview. There was no error in its exclusion. It was not competent for any purpose, nor was it admissible under any rule of evidence. It is claimed that it was material evidence affecting the credibility of the witness' testimony. It is too clear to require discussion, however, that it was not competent to fortify the testimony of the witness by showing that a newspaper had published an interview with him which substantially corroborated the oral testimony which he gave in court.

The remaining assignments of error are equally devoid of merit. They relate to the charge to the jury. The court gave the jury full instructions upon all features of the case. Error is assigned to one portion of the charge, and to the refusal of the court to give certain instructions which were requested. A portion of one of the instructions so requested is quoted in the brief of the plaintiff in error as follows:

"The law does not require from a railroad company the utmost degree of care which the human mind is capable of imagining. It simply requires that the highest degree of practicable care should be used which is consistent with the mode of transportation employed. While railroad companies are to use all reasonable precautions against injuries to passengers, these precautions are to be measured by those in known use in the same business which have been shown by experience to be efficacious. The railroad company is required to use the best precautions in known practical use to secure the safety of its passengers, but it is not required to employ every possible preventive which the highest scientific skill might suggest, nor is it required to adopt any mere speculative and untried experiment."

This requested instruction, which is indeed well sustained by authority, was properly denied, for the reason that it had no relation to the case. Such an instruction applies to cases involving the use of machinery, devices, and improvements in railroad equipment. In lieu of the requested instruction, the court charged the jury that it was the duty of the carrier to keep its track in a safe condition for the passage of trains under all known conditions, and to employ such agents and laborers as would secure that result under the usual and known circumstances attending the situation, and directed them to find a verdict for the defendant if they found that it used the care and vigilance of a very prudent and cautious person in the situation, and in view of all the circumstances attending the derailment of the train.

Another instruction was requested involving the presentation of the rule concerning the preponderance of evidence in such a case. But the court in that connection instructed the jury that the law imposed upon the defendant in error "the burden and necessity of showing by preponderance of evidence that it was the negligence of the defendant railroad company, and not something else, which caused the alleged injuries."

Another instruction requested by the plaintiff in error was the following:

"If the jury should find from the evidence that the derailment was caused by an unprecedented flood at a particular spot on the track, and that such flood was not the result of any human act or agency, but was the result of natural forces operating in an unforeseen and inevitable way, such as is sometimes named 'an act of God,' without the intervention of any breach of duty on the part of the defendant, I instruct you that, in providing against any such natural happening or act of God, the railroad company is not held to the utmost and extreme care of a very cautious person, but sufficiently discharges its duty in the premises if in this behalf it exercises ordinary care and diligence."

As to the proposition involved in the first part of this requested instruction, the court charged the jury thus:

"The evidence tends to show that this flood, and the washout in the railroad embankment resulting therefrom at this point, was an unforeseen occurrence. No flood and washout at this particular place had occurred during the many years the railroad had been built. If you believe this evidence—that the flood and washout were unexpected, and that no experience of the officers and agents of the railroad company had warned them of the likelihood of such an occurrence—if you believe this testimony, as I have said, you may determine that the flood and washout were caused by what the law terms 'an act of God.'"

But as to the latter portion of the requested instruction, the plaintiff in error cites and relies upon Gillespie v. St. L., K. C. & N. Ry. Co., 6 Mo. App. 554, in which the court announced the rule that, to give "to the carrier the practical benefit which the law allows him, he must be held, in preventing or averting the effect of the act of God, only to such foresight and care as an ordinarily prudent person or company in the same business would use under all the circumstances in the case." It is true that a carrier is not liable for injury from a vis major or an act of God, if it be uncombined with neglect in the employment of human agency. The party claiming the benefit and application of this exemption must be without fault on his part. Read v. Spaulding, 30

N. Y. 630, 86 Am. Dec. 426; Odd Fellows' M. Aid Ass'n v. James, 63 Cal. 598, 607, 49 Am. Rep. 107; Dibble & Seligman v. Morgan, 1 Woods, 406, Fed. Cas. No. 3,881. The court, we think, fully complied with the rule applicable to such a case in giving the following instruction:

"But if, on the other hand, the defendant could not discover the condition of this embankment by the exercise of such diligence and prudence as skillful men engaged in that kind of business might fairly be expected to use under like circumstances, it would not be chargeable with negligence, and would not be liable in this case."

It is assigned as error that the court charged the jury as follows:

"It is undoubtedly the duty of the carrier to keep its tracks in safe condition for the passage of trains under all known conditions, and to employ such agents and laborers as would secure that result under the usual and known circumstances attending the situation."

But the court also said to the jury:

"The duty of the carrier is fulfilled when it uses the legal degree of care in the premises, no matter whether the safety be the result or not."

The court thus properly charged the jury on the law of the case when applied to the question of the right of a passenger to recover damages for personal injuries sustained under the circumstances of the present case. We find no error in any of the instructions given, or in refusing those that were requested.

The judgment of the Circuit Court is affirmed.