BOREN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1906.)

No. 1,209.

**1. Perjury—Indictment for Subornation.**

An indictment under Rev. St. § 5395 [U. S. Comp. St. 1901, p. 3654], for subornation of perjury considered, and *held* good.

**2. Same—False Oath—Timber and Stone Entry.**

Under the provision of the act for the sale of timber and stone lands (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1546]), requiring an applicant for purchase thereunder to make oath that he has not "directly or indirectly made any agreement or contract in any way or manner" by which the title should inure in whole or in part to the benefit of any person except himself, such oath is false, and constitutes perjury where he has made an agreement to sell the land, whether written or oral; its enforceability being immaterial.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perjury, § 23.]

**3. Same—Subornation—Measure of Proof Required.**

The rule that under an indictment for perjury the defendant cannot be convicted on the uncorroborated testimony of a single witness is not applicable to a case of subornation of perjury.

In Error to the District Court of the United States for the Northern District of California.

The plaintiff in error was jointly indicted with Harry W. Miller and Frank E. Kincart for subornation of perjury. The plaintiff in error was tried separately and was found guilty of the first, second, third, and fifth counts of the indictment. The counts are all similar, differing only in the names of the persons suborned to perjury. The first count charges that the accused "on the fourteenth day of November, in the year of our Lord one thousand nine hundred and four, at Redding, in the county of Shasta, state and Northern district of California, then and there being, did then and there unlawfully, willfully, knowingly, and feloniously procure, instigate, and suborn one John M. Layton to appear and take an oath before one Frank M. Swasey that a certain declaration and affidavit by him, John M. Layton, subscribed was true, said declaration and affidavit being then and there a matter in which the laws of the United States authorize an oath to be administered—that is to say, a sworn statement—for the purchase of timber and stone lands described therein as the northwest quarter of section eight, township thirty-two north, of range eight west, in that said Frank M. Swasey was then and there an officer competent to administer said oath—that is to say, the register of the United States land office at Redding—and that, in accordance with said procurement, instigation, and subornation, the said John M. Layton did appear before the said Frank M. Swasey and take an oath that said declaration and affidavit was true; and that the said Harry W. Miller, Frank E. Kincart, and William H. Boren, and each of them, did then and there unlawfully, willfully, knowingly, and feloniously procure, instigate, and suborn said John M. Layton willfully and contrary to his oath to state and subscribe in said declaration and affidavit a certain false and untrue material

144 F.—51

statement that he, John M. Layton, had personally examined the lands mentioned in said declaration and affidavit, and that he did not apply to purchase the land above described on speculation, but in good faith to appropriate it to his own exclusive use and benefit, and that he had not directly or indirectly made any agreement or contract, or in any way or manner, with any person or persons whomsoever, by which the title he might acquire from the government of the United States may inure in whole or in part to the benefit of any person except himself, which statement he, John M. Layton, at the time of stating and subscribing the same, did not believe to be true and knew to be untrue, in this: that he, John M. Layton, had not personally examined said lands and had theretofore entered into a contract for the sale of said land to the Washington Mill & Lumber Company. And that the said Harry W. Miller, Frank E. Kincart, and William H. Boren, and each of them, at the time of the aforesaid procurement, instigation, and subornation, well knew that the aforesaid statement was a false and untrue material statement, and well knew that said John M. Layton did not believe the same to be true."

W. S. Burnett, Charles Page, Edward J. McCutchen, Samuel Knight, and Frank V. Cornish, for plaintiff in error.

Robert T. Devlin and Alfred P. Black, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended that the indictment is fatally defective for want of proper assignment of perjury. No objection was made in the trial court to the indictment by demurrer, motion to quash, or in any other manner until after the verdict. Thereby the plaintiff in error waived all objections which run to the mere form in which the elements of crime are charged, or to the fact that the indictment is unartificially drawn. Dunbar v. United States, 156 U. S. 186, 15 Sup. Ct. 325, 39 L. Ed. 390. The question, then, is whether some substantial element of the crime charged has been omitted. The essential elements are: (1) that the testimony of the suborned witness must be false and known to be false by him, and the truth of the matter so falsely testified to must be set forth; (2) the suborner must know or believe that the testimony of the witness about to be given will be false, and he must know or intend that the witness is to give the testimony corruptly or with the knowledge or belief of its falsity. Stewart v. State of Ohio, 22 Ohio St. 477; United States v. Dennee, 3 Woods, 39, Fed. Cas. No. 14,947. The indictment in the present case in substance, we think, meets those requirements. It alleges in the first count, and all the other counts are similar, that the defendants "willfully, knowingly, and feloniously suborned John M. Layton to appear and take an oath to the declaration and affidavit" (describing it), and that the said John M. Layton did take an oath that such declaration and affidavit was true. It alleges that the "defendants willfully, knowingly, and feloniously procured and suborned said John M. Layton willfully and contrary to his oath to state in said declaration a certain false and untrue material statement," etc., setting forth the statement, "which statement he, John M. Layton, at the time of stating and subscribing

the same, did not believe to be true and knew to be untrue, in this: that he, John M. Layton, had not personally examined said lands and had, theretofore, entered into a contract for the sale of said lands to the Washington Mill & Lumber Company," and that each of the defendants at the time of the aforesaid procurement, instigation, and subornation well knew that the aforesaid statement was a false and untrue material statement, and well knew that said John M. Layton did not believe the same to be true. In brief, it is charged in the indictment that John M. Layton committed perjury. All of the essential elements of the perjury are set forth—the false swearing, the untruth of the statements sworn to, and the truth in regard to the matters concerning which such false oath was given. It also charges that the defendants willfully, knowingly, and feloniously procured him to make the oath that they knew and understood that the statement was false, and knew that he did not believe the same to be true. The guilty knowledge on the part of the suborners is thus set forth, together with their knowledge and intent that the witness should make the affidavit corruptly and with knowledge or belief of its falsity. The objection that there is no allegation that Layton did swear to the statements recited in the affidavit is not well taken, for it is distinctly charged that the said John M. Layton did appear before the said Frank M. Swasey and did take an oath that said declaration and affidavit was true. The decision of this court in Bartlett v. United States, 106 Fed. 884, 46 C. C. A. 19, relied upon by plaintiff in error, is not in point. In that case the indictment was held defective for failure to allege the truth of the matter concerning which the alleged false oath was made. Here the truth of the matter is distinctly alleged.

The point is made that none of the counts states the time when the perjured affidavits were made, and that none of the counts alleges that the persons making the alleged false affidavits were sworn. We find no merit in these objections. The charge in each count is that on November 14, 1901, each of the persons named in the various counts was procured to appear and take oath before Frank M. Swasey, register of the United States land office at Redding, and did appear before said Frank M. Swasey and take an oath that said declaration and affidavit was true.

It is contended that none of the counts alleges that the persons before whom the respective oaths were taken was at the time of administering the oaths an officer competent to administer them. This objection, too, is unsupported by the record. The first three counts allege that Frank M. Swasey was then and there an officer competent to administer said oath—that is to say, the register of the United States land office at Redding—and the fifth count alleges that S. N. Witherom was then and there an officer competent to administer such oath—that is to say, the deputy clerk of Shasta county, Cal.

It is objected, further, that none of the counts alleges that at the time of the alleged false swearing the matter was one in which the laws of the United States authorize an oath to be administered. The indictment recites:

"Said declaration and affidavit being then and there a matter in which the laws of the United States authorize an oath to be administered, that is to say, a sworn statement for the purchase of timber and stone lands described therein," etc.

It has been held that such an allegation is unnecessary (Babcock v. United States [C. C.] 34 Fed. 873); but, if it were necessary, the indictment sufficiently sets it forth.

It is contended that there was no proof of any of the elements of the crime charged against the plaintiff in error. No objection was made on the trial to the submission of the case to the jury, nor was the court requested to instruct the jury to return a verdict of not guilty. If, as contended by the plaintiff in error, under the authority of Clyatt v. United States, 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726, we are to examine the testimony to see if there was evidence to justify the jury's verdict, we have no difficulty in finding in the record evidence which, if credited by the jury, was sufficient to sustain their finding. There was evidence tending to show that the plaintiff in error and his codefendant Miller, were operating together to procure entrymen to take up the lands described in the indictment; that in so doing they claimed to be the agents of the Washington Mill & Lumber Company; that the plaintiff in error represented himself to be the timber cruiser of that company; that he and Miller were together at Redding on the day when the false oaths were taken; that they were there for the purpose of meeting the applicants who are named in the indictment; that they had with them the forms for applications, and Miller filled them out in pursuance of verbal agreements made with the applicants, whereby the latter were to be paid $8 per acre for the land as soon as they proved up. There was evidence that they both knew that the applicants had not seen the land described in their respective applications, and that they knew that each of the applicants had made such verbal agreement for the sale thereof. There was evidence that the plaintiff in error told some of the applicants that if they were asked at the land office where the land was to say it was on Grass Valley Creek, and that he told one of them to keep the papers out of sight for the reason that perhaps the government agents would be in the land office, and said, "If the government agent is there, I will give you the wink," and that to another he said, "If they ask you if you have viewed the land, tell them you have viewed it." There was evidence that the plaintiff in error went to the land office with the applicants mentioned in the first three counts of the indictment, and that he told the applicant named in the fifth count to take his oath before the county clerk, for the reason that there would not be so many questions asked there.

It is urged that the proofs fail to show that the applicants at the time of making their respective oaths had entered into an agreement to dispose of their claims in violation of the law, for the reason that their agreements, if any were made, were oral, and were not enforceable. We find no merit in this contention. The language of Act June 3, 1878, c. 151, § 2, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1546], requires an oath of the applicant "that he has not directly

or indirectly made any agreement or contract in any way or manner." This makes it clear that the oath may be false, whether made under an oral understanding or agreement or under an agreement in writing signed by the parties. Nor is there merit in the contention that the written instruments were not admissible in evidence, for the reason that they were not signed by or on behalf of the mill company. They were all signed by the respective locators, and one was signed also by Miller as agent of the company. By their language these instruments tended to prove that they were made before the locations were made and for the purpose of expressing the terms of the prior verbal agreements. That which was signed by Layton reads as follows:

"D. C. McWhittier, President.                                    H. W. Miller, Agent.

"Office of the Washington Mill & Lumber Company.

"We, the Washington Mill & Lumber Company, desiring to acquire timber and stone land in Northern California, and John M. Layton wishing to exhaust his rights under the timber and stone act: Now, therefore, we agree with said John M. Layton to take the said claim at time of final proof at $8.00 (eight dollars) per acre, said John M. Layton to locate the N. W¼. quarter section 8, township 32 N. range 8, and we will advance said John M. Layton $500.00 (five hundred dollars), and upon the assignment of said claim to us we will pay the said John M. Layton the remainder of said money. This agreement to be signed by said John M. Layton and countersigned by the company's agent and deposited in escrow until the day of transfer. In witness whereof we hereunto set our hands and seals this, the 14 day of Nov. 1904."

't is urged that there is not sufficient evidence to sustain the verd'ct, for the reason that the proof of each count consists of the testimony of a single witness. It is true that under indictments for perjury the generally accepted rule is that the accused cannot be convicted on the uncorroborated testimony of a single witness. The reason assigned is that the same effect is to be given to the testimony of the party accused as to that of the accusing witness, and the proof would be merely the oath of one person against that of another. The reason of the rule in the form in which it is expressed does not apply to a case of subornation of perjury such as the present case for the reason that here the testimony does not consist of the oath of one person against that of another. The testimony of each witness for the government involves, it is true, the impeachment of his own former sworn statement, but it is direct evidence against the accused as to his instigation of the perjury. We find that in People v. Evans, 40 N. Y. 1, it was held that subornation of perjury may not be proven by the uncorroborated testimony of the person suborned. The contrary was held by Judge Deady in United States v. Thompson (C. C.) 31 Fed. 331. In State v. Renswick, 85 Minn. 19, 88 N. W. 22, it was held that, where it is sought to establish by his own testimony the perjury of the person suborned, his testimony must be corroborated, but that the fact that the accused suborned or induced him to commit the crime may be established by the uncorroborated testimony of the witness if it satisfies the jury beyond a reasonable doubt. If corroboration of the testimony of the witnesses in this case as to their perjury in making their oaths was

necessary, we find corroboration in the evidence which is in the record. The alleged perjury consisted in two false statements of fact: First, that the witnesses had viewed the land; and, second, that they had not entered into an agreement for its disposal. Two of the witnesses testified that, on their making the objection to Miller and the plaintiff in error that they had not seen the land, Miller, in the presence of the plaintiff in error, promised them, after their oaths had been made, to take them out to view it. The plaintiff in error, in testifying on his own behalf, admitted that he heard that promise made. There is corroboration, also, of the fact that agreements had been made for the disposal of the land in the written instruments produced in evidence, instruments which purported to be the written promises of the company which the plaintiff in error claimed to represent, whereby the company was to purchase the land from the applicants at $8 per acre. In addition to this, there is the fact that the plaintiff in error testified at length on his own behalf, whereby the jury had the opportunity to observe his demeanor and manner of testifying. In such demeanor and manner of testifying, as well as in the substance of the testimony as it appears in the record, the jury may have found corroboration of the testimony of the witnesses for the United States. Such corroboration was held sufficient in State v. Miller, 24 W. Va. 802. The charge of the court to the jury is not before us, and we must assume that it included appropriate instructions as to the proof necessary to sustain a conviction. In view of these considerations and the fact that the objection now urged was not presented to the court below, and is not even included in the assignments of error, we do not feel justified on that ground in disturbing the verdict.

The judgment is affirmed.