O'LEARY v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. December 17, 1907.)

No. 727.

1. WITNESSES—DISQUALIFICATION BY PERJURY—CONSTRUCTION OF STATUTE.
Under Rev. St. § 5392 [U. S. Comp. St. 1901, p. 3653], which, after defining the crime of perjury and prescribing the punishment therefor, provides that the person committing the offense "shall moreover thereafter be incapable of giving testimony in any court of the United States until such time as the judgment against him is reversed," the incapacity attaches only to persons who have been convicted under that section.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 108–114.]

2. CRIMINAL LAW—REVIEW ON APPEAL—RULINGS ON ADMISSION OF EVIDENCE.
The action of a trial court in admitting testimony over objections will not ordinarily be reviewed by an appellate court, where neither the purpose of the testimony nor the ground of the objections is shown by the record.

3. CRIMINAL LAW—INSTRUCTIONS—APPLICABILITY TO ISSUES.
On a trial for perjury, the refusal of the court to state in its charge the rule requiring two witnesses, or one witness and corroborating circumstances, to establish the material facts charged, was not error, where

the only facts averred, not established beyond controversy, related to the question of intent; the only real issue being as to whether defendant testified knowingly and intentionally or through mistake, to which issue the rule could not apply.

In Error to the District Court of the United States for the District of Massachusetts.

Harvey H. Pratt (James E. Cotter and Joseph P. Fagan, on the brief), for plaintiff in error.

William H. Lewis, Asst. U. S. Atty. (Asa P. French, U. S. Atty., on the brief), for the United States.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. The plaintiff in error was indicted for perjury under section 5392 of the Revised Statutes [U. S. Comp. St. 1901, p. 3653]. This is the general provision of the statutes of the United States with reference to prosecutions for perjury. In this particular case the perjury was in connection with the naturalization of one Holmes. By the record of the court where Holmes was naturalized, it appears that the proceedings, including O'Leary's affidavit, were on the 11th day of January, 1904. The indictment alleges that O'Leary made oath that he had known Holmes for over five years next preceding the 11th day of January, "during which time," as it further alleges O'Leary also made oath, "he, the said Holmes, had resided in Boston, in said district." It continues further:

"Whereas, in truth and in fact he, the said O'Leary, had not known the said Holmes for said five years, and said Holmes had not resided in Boston during said time, all of which he, the said O'Leary, at the time he so deposed, swore, declared, and testified as aforesaid, then and there well knew."

It appeared by the testimony of Holmes and his wife that they arrived together in the United States on the steamship Altonia on April 15, 1900; and they also both testified that they went to a friend of Holmes, Margaret Brown, at 107 Union Park street, Boston. The records of the immigrant inspector which were put in the case conform to that statement, even to the extent that the name and residence of the person whom Holmes and his wife were to join were given as "one Margaret Brown, Union Park street, Boston." Therefore there can be no question that Holmes and his wife were not in the country until 1900. O'Leary testified in his own behalf, and undertook to give the details of the beginning of his acquaintance with Holmes. He made no assumption that he knew Holmes before Holmes arrived in the United States; but he gave the place and time where and when he first met him as Roxbury in 1898 or 1899.

The first question arises from the claim that, if O'Leary resided at Boston at any time during the five years to which the indictment relates, then the portion of the indictment which alleges that he had not resided in Boston during said time was disproved. It is true that the specific words which should have been used were more properly "during the whole of said time," or "for said time"; the latter being the form usually found in indictments of this character. However, the allegations that O'Leary testified that he had known Holmes for five

years preceding the 11th day of January, 1904, and that he had not known him for said five years, were material, and, inasmuch as the jury returned a general verdict, they certainly found enough to sustain the judgment; so that, whatever might have been the result if there had been anything in the nature of a special demurrer or a motion to strike out, no error can be assigned on this account on this record.

On the same day on which O'Leary was tried, Holmes had pleaded guilty to an indictment based, as we understand, on section 5425 of the Revised Statutes [U. S. Comp. St. 1901, p. 3669]. He was thereupon offered as a witness by the United States, but O'Leary seasonably objected to his giving any testimony on the ground that, being guilty of perjury, he was disqualified by the closing words of section 5392 of the Revised Statutes, which, after directing the punishment to be imposed on one convicted thereunder, adds that he "shall moreover thereafter be incapable of giving testimony in any court of the United States until such time as the judgment against him is reversed." No reasonable construction of this statute according to the usual rules of interpretation would result in holding that this incapacity attached to any one who had not been found guilty of the offense under section 5392 in accordance with the forms of the law. That such incapacity could be set up in connection with merely proof of the facts required to convict under that section would be contrary to the universal practice under the circumstances contemplated by that and analogous statutes. Moreover, the word "thereafter," which the plaintiff in error failed to bring to our attention, makes it entirely plain that a conviction must precede the incapacity.

It appears that a series of questions of which the following was one, and all of which were of the same general character, were proposed on the cross-examination of O'Leary, namely: "Q. Are you on any other naturalization paper?" His counsel objected to this question, without assigning any reasons therefor. This objection was overruled, and the witness answered, "Yes"; and the examination went on, subject to like objections, the witness stating that he had been on 10 or 15 such papers. The record does not explain why this testimony was sought for by the United States, nor the grounds of the objections. Various reasons for calling out the testimony and for objecting to it may be surmised; but, unless an appellate tribunal can read from the record the pros and cons beyond mere surmise, it is well settled that justice alike to the court below and the party appealed against does not permit it to go into speculations in reference thereto. This rule has been so often stated by us that we feel no hesitation in applying it to this case, and in holding that these general objections do not require any attention from us.

The closing alleged error is based on a request for instructions as follows:

"It is not enough to convict the defendant if the jury believe the testimony of the witness Holmes to be true. The government must present another witness to the material facts stated by the witness Holmes in the case at bar, or strong corroborative circumstances."

The rule on this topic is sufficiently stated in section 257 of Greenleaf's Evidence and the notes thereto. It does not apply to all the facts

alleged in an indictment. Commonwealth v. Pollard, 12 Metc. (Mass.) 225, 228; 2 Bishop's New Criminal Procedure, p. 423. In this particular case it could not have been needed in connection with the length of time that Holmes had been in the United States, because that was proven alike by Holmes and his wife, supported by indubitable evidence from the records of the immigrant inspector; nor as to the length of time during which O'Leary, the plaintiff in error, had known Holmes, because he testified himself, as we have shown, that his acquaintance commenced in the United States, so it could not have gone back of April, 1900. It is difficult to comprehend to what particular facts of this case the rule relied on could apply. It seems beyond question that what was testified by O'Leary at the time Holmes was naturalized was not in accordance with the facts; so that the real issue was apparently only one of intent or forgetfulness on the part of O'Leary, and not in any sense as to anything to which corroborative proofs would relate. If this point is to be relied on, this difficulty should have been cleared up both to the trial court and to us. All the matters to which the rule of corroboration could apply were, so far as we can see, beyond question, as we have pointed out.

We believe this covers all the points brought to our attention.

The judgment of the District Court is affirmed.