## HOOKER v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
October 5, 1927.

No. 7726.

1. Criminal law ⚖=382—Acts testified to held sufficiently connected with defendant to be admissible.

Testimony *held* to sufficiently connect the acts testified to with defendant to render it competent and material.

2. Criminal law ⚖=1173(2).—In prosecution for subornation of perjury, denial of requested charge as to defendant's knowledge of false swearing held not prejudicial error.

In prosecution for subornation of perjury, refusal of requested instructions as to necessity of defendant's knowing of false swearing *held* not prejudicial error, in view of the course of trial and the charge given.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Criminal prosecution by the United States against J. G. (Guy) Hooker. Judgment of conviction, and defendant brings error. Affirmed.

W. B. Sorrells, of Little Rock, Ark., for plaintiff in error.

Charles F. Cole, U. S. Atty., of Little Rock, Ark.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. Mr. Guy Hooker was indicted, tried, and convicted in the court below of subornation of perjury, in that in the trial of the case of the United States against Seth Lamar, in the United States District Court for the Eastern District of Arkansas on November 10, 1925, for the alleged offense of selling intoxicating liquor, he induced and suborned Havis Waters to testify under oath that neither he nor B. G. Cole, his companion, purchased any whisky of Lamar on the 18th day of April, 1925, but that he bought it of one Joe King, when Hooker and Waters knew that such testimony was false.

[1] Mr. Hooker does not complain that there was no substantial evidence to sustain the verdict against him, but of alleged errors in rulings of the court at his trial. Havis Waters and B. G. Cole, two minors, testified in this case that Cole had purchased some whisky of Lamar on April 18, 1925; that Lamar had been arrested for selling it; that he had been taken before a commissioner therefor; that they had testified before that commis-

sioner to Cole's purchase of the whisky; that thereafter the defendant Hooker and Trimble had induced them to agree to give different testimony at the coming trial of Lamar for the sum of $35 each and to testify at that trial that Cole had not purchased any whisky of Lamar, but had bought some of Joe King, a negro; that Hooker had agreed with them that the $70 they were to receive for such false testimony should be deposited and had caused it to be deposited with Clyde Fullbright until after the trial of Lamar; that at the trial they had given the false testimony they had agreed with Hooker to give; and that soon after that trial Hooker had caused Fullbright to pay the agreed $70 to them. After this testimony and much other testimony had been received in this trial of Mr. Hooker, Mr. Fullbright was called by the government as a witness, and he testified that some time in the fall of 1925 Mr. Hooker, Waters, and Cole persuaded him to take and hold $70 for them; that after this agreement Hooker and Ross, an employee of Hooker, came to him at a time and place set, and Ross handed to Fullbright $70; that Hooker then said it would be a good idea to put it in the bank; and that he (Hooker) would let him (Fullbright) know after the trial whether to give it to B. G. Cole and Havis Waters; and that after the trial he had a telephone call that he took to be from Hooker that he would have a man down to see him, and only a few minutes later Mr. Ross came down with B. G. Cole and Havis Waters; that Ross said to Fullbright he came down after the money, and he (Fullbright) gave it to him there in the bank. No objection was made to this testimony of Mr. Fullbright until after it had been received in evidence and counsel for the defendant was cross-examining him, when counsel moved to exclude it because it showed that Fullbright never gave the $70 to Hooker but gave it to Ross. The court refused to strike out the testimony, and defendant excepted. This ruling constitutes the first alleged error of which defendant's counsel complains. But, the objection to Fullbright's testimony is not tenable. In the state of the evidence at the trial when this testimony was offered and admitted, it was clearly competent, material, and strongly corroborative of the testimony of Cole and Waters.

The second complaint is that the court refused to permit the government's witness Ross to testify at greater length about a check of $112, which Hooker received for the sale of a bale of cotton which had belonged to Lamar, and out of the proceeds of which

Ross had testified $70 was taken and the balance paid to Lamar. This check was offered in evidence by counsel for Hooker. Thereupon the government admitted that the $112 check evidenced the ownership of the money it represented by Lamar, and that Hooker charged to Lamar $70 and took it out of the proceeds of this check. Thereupon the court excluded the check from the evidence because the admissions of the government rendered it immaterial. There was certainly no error in this ruling, and it calls for no further consideration.

[2] The court included in its charge an elaborate and plain declaration of the law applicable to this case, a plain statement of the issues of fact the jury were required to determine, and a fair and clear review of the evidence in the case. At the close of the charge, Mr. Wilson, counsel for Mr. Hooker, said: "In the second charge, I think, as I recall it, the court failed to tell them that a material allegation is that Hooker must have known they were swearing falsely when they did swear falsely." The judge answered that he did not think it was necessary to so charge; that he assumed that the jury had common sense; that the testimony was that Hooker was present at the trial before the commissioner and that Trimble was present; and that at that hearing Cole and Waters testified that they bought the whisky from Seth Lamar, and Joe King's name was not mentioned. Counsel for Mr. Hooker replied, "I save my exceptions to the refusal of the court to charge as requested." It is certain that under the general charge and this colloquy every juror must have known that Hooker's knowledge that Cole and Waters were testifying falsely when they testified that Cole bought no whisky of Lamar but bought some of Joe King was indispensable to his conviction, and there was therefore no error in this ruling.

The court instructed the jury that the testimony that Hooker and his employee Ross placed the $70 in the hands of Fullbright to hold until after the trial of Lamar at which Waters and Cole testified that Cole did not buy any whisky of Lamar but bought it of Joe King, and after that trial Ross, Cole, and Havis Waters went to Fullbright, and he returned the $70 to Ross, was introduced to corroborate the testimony of Cole and Havis Waters that they agreed with Hooker to give this testimony for $70, that they did give it for that $70, and that he caused the $70 to be paid to them therefor. Defendant's counsel excepted to the statement of the court that, if they found that Waters and

Cole testified truthfully about the $70, the purpose for which Hooker promised to pay it to them, that it was at their request that the money was deposited with Fullbright to be turned over to them after the trial of Lamar, and that they had testified falsely at Lamar's trial as they were told to testify, that would be a corroboration of their testimony. But, the corroborative character of this testimony and its competency is so evident as to warrant no further consideration or discussion.

The next objection of counsel is that the court refused to give a special request of his, the substance of which was that the jury must find that the witness Cole swore falsely in the trial of this issue (the sale of whisky to Cole by Lamar) on or about the 10th day of October, 1925. But that issue was correctly and forcibly submitted to the jury by proper instructions in the charge of the court.

Finally, counsel for Mr. Hooker complains because the court failed to give to the jury that part of the following instruction which is included within the parenthesis:

"If you find that perjury was committed as charged in the indictment, then it will be your duty to proceed to inquire whether the defendant procured the person charged to have been suborned to commit that offense, and is consequently guilty of subornation of perjury. In order to make out this offense against this defendant, it is incumbent upon the government to satisfy you beyond a reasonable doubt that the perjury was in fact committed by the person suborned; that the testimony of the person suborned was willfully false and willfully given contrary to his oath and not by him believed to be true (and the defendant knew or believed that the testimony given would be false; that the defendant knew that the person suborned would willfully testify falsely, contrary to his oath and not believing the testimony to be true); and that the defendant induced or procured the person suborned to give such false testimony."

But there was in our opinion no prejudicial error to the defendant Hooker in this failure, because, as we have already stated, every juror must have known from the general charge of the court, the course of the trial and the colloquy between the court and the defendant's counsel which has been recited, that the defendant's knowledge and belief that the testimony he sought to procure would be false, that, if Havis Waters testified, as he sought to have him, he would willfully testify falsely, contrary to his oath and

not believing that testimony to be true, was indispensable to his conviction, ·and our conclusion is that there was no error prejudicial to the defendant in the trial of this case, and that the judgment below must be affirmed. It is so ordered.