**GOINS v. UNITED STATES.**

No. 4350.

Circuit Court of Appeals, Fourth Circuit.

Oct. 5, 1938.

SOPER, Circuit Judge, dissenting.

———◇—— —

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

S. H. Sutherland, of Clintwood, Va. (S. H. & Geo. C. Sutherland, of Clintwood, Va., on the brief), for appellant.

Joseph H. Chitwood, U. S. Atty., of Roanoke, Va., and Howard C. Gilmer, Jr., Asst. U. S. Atty., of Pulaski, Va. (F. S. Tavenner, Jr., Asst. U. S. Atty., of Woodstock, Va., on the brief), for the United States.

PARKER, Circuit Judge.

This is an appeal from a conviction of perjury. At October term, 1937 of United States District Court at Big Stone Gap, Virginia, the defendant John Goins and

wife were tried under an indictment charging them with facilitating the transportation, concealment and sale of morphine hydrochloride in the preceding April in violation of Sec. 174, Title 21 of the United States Code, 21 U.S.C.A. § 174. On this trial the government relied upon the evidence of a witness Millhorn, a drug addict, who testified that he purchased morphine from Mrs. Goins on several different dates in April, 1937, and further that she and her husband had made a trip with him to Chicago in January, 1937, and that one of the purposes of the trip was to make inquiry as to the price at which morphine might be purchased. The defendant Goins took the stand in his own behalf and in the course of his testimony denied that he and his wife had made any trip to Chicago with Millhorn in January 1937 or that he had ever been to Chicago in his life. His oath with respect to this matter was the perjury alleged in the case at bar.

In the trial below the government relied for conviction upon the testimony of Millhorn and one Simmons, a clerk in a Chicago hotel, who identified Goins as being the man who registered at the hotel for himself and wife under the name of John Goins and wife in January 1937. The government introduced also the hotel registration card and proved by expert testimony that the signature appearing thereon was the same as that appearing on other instruments which were proven to be in the handwriting of Goins. These instruments were also put in evidence and submitted to the inspection of the jury. Defendant Goins denied the signature, denied his presence in Chicago and introduced evidence as to dealings claimed to have been had by him at his home in West Virginia on the date of the Chicago trip. He showed by a number of witnesses that Millhorn was a man of bad character and unworthy of belief.

The points relied on for reversal are: (1) That the court should have directed a verdict for defendant on the ground that the oath relied on as constituting perjury did not relate to a material matter; (2) that the court should have granted an instruction to the effect that the testimony of at least two witnesses, or of one credible witness and strong corroborating circum-

stances, is necessary to a conviction of perjury, except where documentary testimony is relied on; (3) that the court should have excluded testimony of statements made by Millhorn to the clerk of the court and a deputy marshal as to the Chicago trip; and (4) that the court should not have permitted the jury to take to the jury room the registration card introduced in evidence and the other specimens of handwriting introduced for the purpose of comparison.

Little need be said as to the first point. The testimony of Millhorn on the former trial as to the trip to Chicago, and as to his arrangement with defendant's wife with regard to the inquiry as to the price at which morphine could be purchased, tended to support his testimony as to subsequent dealings with her upon which the government relied for conviction. It also had a tendency to connect the defendant with the crime; and the necessary effect of defendant's denial that he and his wife were in Chicago with Millhorn was not only to contradict the latter's testimony on this point, but also, if believed, to completely destroy his credibility as a witness. The contention that the false oath related to an immaterial matter cannot, therefore, be sustained. "A party not only commits perjury by swearing falsely and corruptly as to the fact which is immediately in issue, but also by so doing as to material circumstances which have a legitimate tendency to prove or disprove such fact." Com. v. Grant, 116 Mass. 17; Rex v. Griepe, Holt, 535, 12 Mod. 142; State v. Shupe, 16 Iowa 36, 85 Am.Dec. 485, and note at p. 493; 21 R.C.L. 259; 48 C.J. 833–835.

On the second point it may be assumed that the requested instruction embodied correctly the rule of law as applied in the federal courts, where it has been uniformly held that the uncorroborated oath of one witness is not enough to establish the falsity of the oath as to which perjury is charged, and that, except where the falsity of such oath is indisputably established, as by documentary evidence, it must be shown by the testimony of at least two witnesses, or by the testimony of a witness corroborated by circumstances proved by independent testimony.[1] And it

---

[1] Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; United States v. Wood, 14 Pet. 430, 437–442, 10 L.Ed. 527; Clayton v. United States, 4 Cir., 284 F. 537, 539; Allen v. United States, 4 Cir., 194 F. 664, 668, 39 L.R.A., N.S., 385; Phair v. United States, 3 Cir., 60 F.2d 953; United States v. Isaacson.

may be assumed also that ordinarily the defendant is entitled to have the jury so instructed.[2] Instructions, however, are not magic incantations the giving of which is necessary in every case to the integrity of the trial. They should be addressed to practical problems arising upon the evidence; and it cannot be held reversible error to refuse one which under the circumstances of the case could not reasonably have affected the result. Such, we think, is the situation here.

Two witnesses testified that accused was in Chicago in January and that he registered at the hotel. The hotel registration card bearing the signature of accused was produced and the genuineness of the signature was proven by comparison with other signatures shown or admitted to be genuine. It may be conceded that the jury might have believed one of the witnesses as to the presence of accused in Chicago and not believed the other; and, if the matter rested here, the refusal to give the requested instruction would be fatal. The proof of the registration card, however, was testimony corroborative of both of the witnesses who testified to his presence in Chicago; and the proof was of such a character that it is inconceivable that the jury should have accepted the testimony of either of the witnesses and at the same time rejected the corroborative evidence. If they believed either Millhorn or Simmons, both of whom testified that he was in Chicago and registered at the hotel, there was no possible basis upon which they could have rejected the registration card, which was produced from the records of a hotel which had no interest in the controversy and was proven to be in the handwriting of the accused by expert testimony as well as by the jury's own comparison of it with signatures proven or admitted to be genuine.

And the defendant's case is not helped by the assumption that the jury may have rejected the testimony of both Millhorn and Simmons and based the conviction on the proof of the registration card. If this were so, the conviction would rest upon documentary evidence emanating from the defendant himself; and in such case it is well settled that no further evidence would be necessary. It is inconceivable, however, that the jury should have based its verdict on the registration card alone and rejected the evidence of the witnesses who testified that they saw accused sign it.

The fact is that the proof of the genuineness of the registration card bore so directly upon the truthfulness of the testimony of the witnesses to the effect that they saw accused in Chicago and saw him register, and the testimony of these witnesses bore so directly upon the genuineness of the registration card that the question of accepting one without the other was not a practical question in the case. The real question was whether the testimony relied on by the government was convincing beyond a reasonable doubt in the face of the contradictory evidence offered by the defendant; and on this question the jury were fully and fairly instructed. A further charge on the necessity of corroboration where a single witness is relied on to establish perjury could not have aided the jury and might have resulted in confusing them and distracting their attention from the real issue. To hold that the failure to give the instruction was necessarily harmful because the jury were at liberty to accept or reject any part of the testimony, would be to close our eyes to the real issue in the case as developed by the testimony and to award a new trial on a barren technicality.

It may well be doubted whether any distinction should now be made between the proof necessary to convict of perjury and that necessary to convict of other crimes. See State v. Storey, 148 Minn. 398, 182 N.W. 613, 15 A.L.R. 629; Marvel v. State, 3 W. W. Harr., Del., 110, 131 A. 317, 42 A.L.R. 1058; Wigmore on Evidence (2d ed.) vol. 4, sec. 2040. The old "oath against oath" reasoning of the earlier decisions is without force now that the defendant is allowed to take the stand and that corroboration sufficient to satisfy the jury of the falsity of the oath may well arise from

2 Cir., 59 F.2d 966; Pawley v. United States, 9 Cir., 47 F.2d 1024. And this is the general rule. 21 R.C.L. 272, 48 C. J. 900; note to 6 Ann.Cas. 812.

2 Allen v. United States, supra, 4 Cir., 194 F. 664, 39 L.R.A.,N.S., 385; Pawley v. United States, supra, 9 Cir., 47 F.2d 1024, 1026; O'Leary v. United States, 1 Cir., 158 F. 796; Manning v. State, 33 Ga. App. 610, 127 S.E. 475; People v. McClintic, 193 Mich. 589, 160 N.W. 461, L. R.A. 1917C, 52; Saucier v. State, 95 Miss. 226, 234, 48 So. 840, 21 Ann.Cas. 1155; Clower v. State, 151 Ark. 359, 236 S.W. 265; Madden v. State, 26 Okl.Cr. 251, 223 P. 716; Knight v. State, 71 Tex.Cr. 36, 158 S.W. 543; 48 C.J. 909.

his demeanor and manner of testifying. Boren v. United States, 9 Cir., 144 F. 801, 806; State v. Miller, 24 W.Va. 802. And in any event it is difficult to see why there should be any greater reason for charging with respect to the necessity of corroboration in such cases than there is for charging on the necessity of corroborating the testimony of an accomplice, and on the duty of scrutinizing such testimony, as to which we have recently held that the giving of such charge is a matter resting in the sound discretion of the trial judge. Hanks v. United States, 4 Cir., 97 F.2d 309. Both go to the weight to be accorded testimony by the jury; and the ordinary rule is that charging as to such matters should rest in the sound discretion of the trial judge, upon whom rests the duty of guiding and directing the jury in their consideration of the case. Little good will be accomplished by prescribing rule of thumb instructions and holding it reversible error not to give them. But without deciding any of these matters, we are satisfied that the refusal of the instruction prayed and the comment of the judge as to the rule of law applicable could not have affected the result and furnish no ground for awarding a new trial. The application of the doctrine of "harmless error" where the jury could not have been misled into an erroneous verdict by erroneous instructions is approved in practically every jurisdiction of which we have knowledge.[3] It is enjoined in the federal courts by statute. 28 U.S.C.A. § 391; Horning v. District of Columbia, 254 U.S. 135, 139, 41 S.Ct. 53, 54, 65 L.Ed. 185; United States v. Brown, 2 Cir., 79 F.2d 321, cert. den. McCarthy v. U. S., 296 U. S. 650, 56 S.Ct. 309, 80 L.Ed. 462; Hooker v. United States, 8 Cir., 21 F.2d 932, cert. den. 277 U.S. 589, 48 S.Ct. 436, 72 L.Ed. 1002; Robilio v. United States, 6 Cir., 291 F. 975, 980. And the application of the doctrine in civil cases, where the right to jury trial is just as sacred as in criminal cases, is enjoined by Rule 61 of the New Rules of Civil Procedure prescribed by the Supreme Court.

On the third point, i. e., the admission of testimony as to Millhorn's statements made to the clerk and the deputy marshal, we do not think that this, when properly considered, is a violation of the hearsay rule. We agree that ordinarily evidence of prior consistent statements is not admissible for the purpose of corroborating a witness unless there is contention that the witness has changed his statement or that it is a fabrication of recent date and the prior statement was made before there was a motive to misrepresent the facts. Ellicott v. Pearl, 10 Pet. 412, 438, 9 L.Ed. 475; Dowdy v. U. S., 4 Cir., 46 F.2d 417, 424; Gelbin v. New York, etc., R. Co., 2 Cir., 62 F.2d 500, 502; Boykin v. United States, 5 Cir., 11 F.2d 484, 485; Di Carlo v. U. S., 2 Cir., 6 F. 2d 364, 366; Southern Pac. Co. v. Schuyler, 9 Cir., 135 F. 1015, 1017; Wigmore on Evidence, 2d ed., vol. 2, secs. 1123–1129; 22 C.J. 230; 70 C.J. 1183–1186; 28 R.C. L. 653–654; Inman Bros. v. Dudley & Daniels Lumber Co., 6 Cir., 146 F. 449, 456. But here there was an attempt to show on cross examination that the witness had no recollection of his visit to Chicago with the accused and to discredit his statement that he had been there. The statement to the clerk was to the effect that following the testimony of the witness on the former trial he gave the name of the hotel at which he stayed in Chicago and said that he could go to that city and locate it. The statement to the deputy marshal was a description of the hotel given to that officer on the way to Chicago together with a statement as of about what date the registration card would be found. The statements admitted, therefore, were not mere prior statements of fact. They were circumstances attending the location of the hotel in which the registration card offered in evidence was found. Taken in connection with the finding of the registration card, they tended to corroborate Millhorn's statement as to the visit to the hotel and were admissible for that purpose, just as prior statements of a witness as to where stolen property had been buried would be admissible if he had carried the officers to the spot and the property had been found there.

But even if the testimony were incompetent, it is clear that its admission could not have prejudiced the accused; as Millhorn testified directly to the facts contained in his statements to the clerk and the deputy marshal. If the statements really tended to corroborate him, they were

---

[3] For case wherein harmless error doctrine was applied to refusal to instruct on necessity of two witnesses or corroborating circumstances in perjury case, see Manning v. State, 33 Ga.App. 610, 127 S.E. 475.

admissible for that purpose. If they did not, they could have done no harm. It is argued that they could easily have been made by Millhorn from knowledge which he had acquired on visits to Chicago when accused was not present. This is true; but this fact must have been just as readily apparent to the jury as it is to counsel or to us; and the jury was just as capable of evaluating it as we are. As said by the late Judge Rose in Hoback v. United States, 4 Cir., 296 F. 5, 9: "We leave to the judgment of 12 men our lives, our liberty, and our property. It would seem that we should assume that the 12, or at all events some of them, have a modicum of common sense."

There was no error in permitting the jury to take the exhibits to the jury room. The rule is well settled that they themselves may be permitted to compare the disputed handwriting with writing admitted or proven to be genuine. 28 U.S.C.A. § 638; Hickory v. United States, 151 U.S. 303, 14 S.Ct. 334, 38 L.Ed. 170; People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193, 291; note, 62 L.R.A. 867, 868; Wigmore on Evidence, 2d ed., vol. 4, p. 271. And it was a matter resting in the sound discretion of the trial judge to permit them to take the exhibits to the jury room. 16 C.J. 1083; 16 R.C.L. 300; Wheeler v. United States, 9 Cir., 77 F.2d 216, 218; Silkworth v. United States, 2 Cir., 10 F.2d 711, 721; Lefkowitz v. United States, 2 Cir., 273 F. 664, 667.

For the reasons stated, the judgment of the lower court will be affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

At a term of the District Court in October, 1937 John Goins and his wife were tried for the unlawful sale of narcotics to one Bill Millhorn in April, 1937 and were acquitted. In 1938 at the May Term of the Court, Goins was convicted of perjury in testifying at the former trial that he and his wife had not gone to Chicago with Millhorn in January, 1937 to ascertain the price at which morphine could be bought. A sentence of three and a half years in the penitentiary, together with a fine of $500, was imposed. The chief witness for the prosecution at both trials was Millhorn, a man of bad reputation for veracity according to the undisputed testimony, who was serving a term of three years in the penitentiary on a narcotic charge. Goins was thirty-four years of age. He conducted a restaurant, filling station and tourist camp at Pennington Gap, Lee County, Virginia, and had lived within five miles of that point all his life. He bore a good reputation according to the testimony of men in established positions in the community who had known him for a long time.

The testimony of Millhorn at the perjury trial was supported by corroborating evidence sufficient, if believed by the jury, to justify a conviction. Corroboration of his testimony was needed not only because a jury would hardly convict a reputable citizen upon the unsupported testimony of a felon, but because the long established rule of law that prevails generally in federal and state courts forbids a conviction of perjury upon the testimony of a single witness. Unfortunately, at the very outset of the trial, the District Judge interrupted and corrected counsel for the defendant in the midst of his opening statement to the jury and announced in striking fashion that there was no such rule of law. The judge also refused an instruction embodying the rule which was offered on behalf of the defendant at the conclusion of the evidence so that from the beginning to the end of the trial the jury labored under a mistaken view of the rights of the defendant.

It is now said that this denial to the accused of the protection of the law was of no moment because he could not have been hurt thereby. If such a conclusion is ever justifiable in a criminal case in an appellate court, it can only be when no possible doubt exists, for otherwise the court assumes the role of trier of facts and the constitutional right of the defendant to a jury trial is ignored. The evidence in the pending case must therefore be examined in the light most favorable to the convicted man.

Millhorn testified that he motored from Middlesboro, Kentucky, to Chicago with Goins and his wife, arriving before dark between 2 and 3 o'clock on a January afternoon in 1937, and went to an apartment hotel in Bitter Sweet Place; that Goins registered in his presence but he perhaps did not register—he was not certain—because he expected to stay with a friend who lived in the hotel. The rest of the evening they did a little shopping, Goins and wife visiting a department store and buying some clothing while the witness re-

mained outside, and then they went to a restaurant and had dinner. The precise time that Goins registered was not stated but it is a reasonable inference from the testimony that the party reached the hotel before 7 P. M. Millhorn also testified that although the purpose of the trip was to learn the selling price of morphine in Chicago, and he had some talk about this matter with Goin's wife before leaving home, the subject was not mentioned to Goins himself at any time either before or during the trip; and the evidence does not show that any inquiries in regard to morphine were actually made.

Both Goins and his wife denied all of the testimony in regard to the journey and said that they did not leave home; and there was other testimony on behalf of the defendant tending to show that Goins was at home at a time when they were enroute to Chicago, according to Millhorn.

The clerk of the hotel identified a registration card dated January 13, 1937 bearing the name of John Goins and wife, indicating that they remained over night and checked out the next day. The clerk identified Goins as the man who signed the card. This testimony, if believed, was strong corroboration of Millhorn's testimony; but there were weak spots in the clerk's story. He did not go on duty until 7 P. M. of the day in question, after Goins had registered according to Millhorn; he saw Goins only once, and did not see him again between January 13, 1937 and the date of the perjury trial on May 3, 1938; he first denied and later admitted that he was shown a picture of Goins by a government agent in Chicago in the early part of 1938; he did not recognize Millhorn at the trial or remember that he accompanied the Goins, although Millhorn, according to his testimony, was present when Goins signed the registration card. Manifestly it was possible for the jury, charged with grave responsibility to the defendant, to doubt the accuracy of the witness' memory.

A deputy marshal testified that the registration card was found by him when he went to Chicago with Millhorn after the first trial in October, 1937 for the purpose of locating the hotel; that in the presence of a former manager of the hotel in charge of the establishment in 1937, the card was found amongst a thousand others in a closet.

A handwriting expert who was shown the card and compared it with writings of the defendant, was of the opinion that Goins wrote his name on the card; but the examination was confined to a comparison of the writing on the card with only two signatures of Goins; the witness found the similarities sufficient to warrant his opinion and the dissimilarities only such as might be expected in writings made by the same witness under different circumstances; and he testified that he was regularly employed in the Federal Bureau of Investigation and had served as expert witness for the government in many cases. This testimony was relevant and important, but it represented merely the opinion of an expert which the jury was not obliged to accept or to regard as the expression of an unbiased witness.

It seems manifest that the jury may have been unable to accept the testimony of the clerk or of the deputy marshal or of the handwriting expert as sufficiently certain to justify a finding of guilt and yet, misled by the erroneous statement of the judge, may have based their verdict on the testimony of Millhorn alone. It is nevertheless insisted that the jury could not have accepted the testimony of Millhorn and rejected the evidence as to the registration card. Even if this is so, it does not justify approval of the course pursued in the trial court. Juries are not always moved by logic, as every lawyer knows, and yet their deliverances may be sustained by the appellate courts. We have ourselves applied the established rule that a verdict of guilty on one count of an indictment will not be set aside because it is inconsistent with a verdict of acquittal on another count rendered simultaneously by the same jury. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Steckler v. United States, 2 Cir., 7 F.2d 59; Belvin v. United States, 4 Cir., 12 F.2d 548; Massenberg v. United States, 4 Cir., 19 F.2d 62.

Moreover, acceptance of Millhorn's testimony and rejection of the rest as insufficiently proved would not necessarily have involved inconsistency. The registration card could not prove itself but to be admitted in evidence must have been connected with the defendant. Millhorn was not questioned about the card and did not identify it; and the jury could reasonably have found the other testimony in regard to it to be without sufficient probative force to serve as a basis for a verdict of guilty. We should not dismiss this possibility with the assertion that the jury could not log-

ically believe the evidence of Millhorn and at the same time disbelieve the evidence as to the registration card. There was another alternative. The jury might have laid aside the evidence in respect to the card altogether without either accepting or rejecting it, because they had been erroneously given to understand that Millhorn's evidence did not need corroboration. Hence the mistaken view of law under which the case was tried may very well have been prejudicial to the defense, and it is certain that counsel for the defendant was deprived of his undoubted right to contend that no one but Millhorn had sufficient knowledge of the facts and that his unsupported testimony was not enough.

Another error prejudicial to the defendant occurred in the course of the trial. The government was allowed to bolster up the testimony of Millhorn improperly by showing that when he went to Chicago after the first trial with the deputy marshal to locate the hotel, he told the marshal, before they found it, the approximate location of the building and how it would look inside. The purpose of the government of course was to support a discredited witness by the testimony of a reputable officer as to the witness' prior consistent statements. An objection to this testimony was overruled, although, as the authorities clearly show, the testimony was inadmissible. While Millhorn stood contradicted and impeached, there were present none of the circumstances that would make prior consistent statements admissible for purpose of corroboration, such as the contention that the witness' testimony was a fabrication of recent date or that he had a motive to testify falsely at the trial which did not exist at the time of the making of the statements. Ellicott v. Pearl, 10 Pet. 412, 438, 9 L.Ed. 475; Southern Pac. Co. v. Schuyler, 9 Cir., 135 F. 1015. See Dowdy v. United States, 4 Cir., 46 F. 2d 417, 424; 22 Cor.Jur. 230; 70 Cor.Jur. 1183; 28 R.C.L. 653; 2 Wigmore on Evidence, 2d Ed., §§ 1122–1129.

It is, however, said that no harm was done to the defendant in this respect because the testimony added nothing to Millhorn's testimony on the stand. Such, however, was not the attitude of the prosecuting attorney at the trial when in the performance of his duties he was endeavoring to do all that he could to convince the jury of the defendant's guilt. Then he not only produced the testimony of the deputy marshal and got it before the jury over objection, but at the very end of the government's case he recalled the clerk of the court who had previously given formal evidence only, and had him testify also over objection that he had had a conversation with Millhorn in October, 1937, shortly after he had testified in the first case, and that Millhorn had then recalled the name of the hotel in Chicago. Thus the same effort was repeated and with the manifest belief that thereby the government's case would be strengthened. On this point, therefore, the government's mouth should now be closed; and if the active counsel in the case on both sides, who doubtless knew more about it than anybody else, were then both convinced that the proposed testimony was prejudicial to the defendant, it should now be difficult to say that the testimony had no effect whatsoever upon the minds of the jury.

The views herein expressed with regard to both questions under consideration make it impossible to sustain the judgment of the District Court unless this court, invading the province of the jury, passes upon the weight and credibility of the testimony and deprives the defendant of his constitutional right to a jury trial.